Name  ALAN MILLER

Street Address  P.O. BOX 7526

City and County  S LAKE TAHOE, EL DORADO

State and Zip Code  CA 96158

Telephone Number  (530) 542-0243

**FILED**

NOV 2 3 2022

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

___ALAN MILLER___

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**-against-**

TAHOE REGIONAL PLANNING AGENCY

Governing Board members, as specified, and
Interim Executive Director Hester (see attached)

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**Complaint for a Civil Case**

Case No. 2:22-CV-02113 KJM AC (PS)
*(to be filled in by the Clerk's Office)*

Jury Trial:    ☐ Yes    ■ No
*(check one)*

## I.   The Parties to This Complaint

### A.   The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach
additional pages if needed.

| | |
|---|---|
| Name | Alan Miller |
| Street Address | P.O. Box 7526 |
| City and County | S. Lake Tahoe, El Dorado |
| State and Zip Code | CA 96158 |
| Telephone Number | (530) 542-0243 |

### B.   The Defendant(s)

Provide the information below for each defendant named in the complaint,
whether the defendant is an individual, a government agency, an organization, or
a corporation. For an individual defendant, include the person's job or title (if
known). Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | John Hester |
| Job or Title (if known) | Interim Executive Director, TRPA |
| Street Address | P.O. Box 5310 |
| City and County | Stateline, Douglas |
| State and Zip Code | NV 89449 |
| Telephone Number | (775) 589-5219 |

Defendant No. 2

| | |
|---|---|
| Name | Tahoe Regional Planning Agency (see attached) |
| Job or Title (if known) | Governing Board Members, as specified |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |

2

Defendant No. 3

      Name _____

      Job or Title _____
      (if known)

      Street Address _____

      City and County _____

      State and Zip Code _____

      Telephone Number _____

Defendant No. 4

      Name _____

      Job or Title _____
      (if known)

      Street Address _____

      City and County _____

      State and Zip Code _____

      Telephone Number _____

## II.    Basis for Jurisdiction

Federal Courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in Federal Court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same state as any plaintiff.

What is the basis for Federal Court jurisdiction? *(check all that apply)*

    ■ Federal question              □ Diversity of citizenship

3



Fill out the paragraphs in this section that apply to this case.

**A.    If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

Tahoe Regional Planning Compact, Public Law 96-551 (94 STAT. 3233), and the adopted Code of Ordinances, Rules of Procedure, and Tahoe Regional Plan.

_____

**B.    If the Basis for Jurisdiction Is Diversity of Citizenship**

　　1.    The Plaintiff(s)

　　　　a.    If the plaintiff is an individual

　　　　　　The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

　　　　b.    If the plaintiff is a corporation

　　　　　　The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

　　　　*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

　　2.    The Defendant(s)

　　　　a.    If the defendant is an individual

　　　　　　The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. *Or* is a citizen of *(foreign nation)* _____.

4

b.    If the defendant is a corporation

The defendant, *(name)* _____, is
incorporated under the laws of the State of *(name)*
_____, and has its principal place of
business in the State of *(name)* _____. *Or* is
incorporated under the laws of *(foreign nation)*
_____, and has its principal place of
business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an
additional page providing the same information for each additional
defendant.)*

3.    The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant
owes or the amount at stake—is more than $75,000, not counting interest
and costs of court, because *(explain)*:

The amount is based on potential civil liability of up to $5000/day of viola-
tion and many laws have been violated by many individuals, thus the accrued
aggregate potential civil liability is estimated at up to $1,255,000.

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as
briefly as possible the facts showing that each plaintiff is entitled to the damages or other
relief sought. State how each defendant was involved and what each defendant did that
caused the plaintiff harm or violated the plaintiff's rights, including the dates and places
of that involvement or conduct. If more than one claim is asserted, number each claim
and write a short and plain statement of each claim in a separate paragraph. Attach
additional pages if needed.

12 Primary Claims are included; please see pages attached briefing each Claim.
The general claim is that in denying a permit Appeal by Alan Miller (with others) the
TRPA Governing Board members denying the Appeal did so in violation of numerous
applicable statutory and regulatory provisions, thus harming our interests in protection
of ground water quality in the Lake Tahoe region and Lake Tahoe water clarity.

5

## IV.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to
order. Do not make legal arguments. Include any basis for claiming that the wrongs
alleged are continuing at the present time. Include the amounts of any actual damages
claimed for the acts alleged and the basis for these amounts. Include any punitive or
exemplary damages claimed, the amounts, and the reasons you claim you are entitled to
actual or punitive money damages.

Relief is requested in the form of setting aside the Appeal denial, and revoking the Pro-
ject permit, and further in the form of civil liabilities for arbitrary and capricious violation
of the Tahoe Regional Planning Compact and subordinate regulations and requirements.
See attached explanations and accounting. Potential aggregate civil liability: $1,255,000.

## V.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my
knowledge, information, and belief that this complaint: (1) is not being presented for an
improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the
cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for
extending, modifying, or reversing existing law; (3) the factual contentions have
evidentiary support or, if specifically so identified, will likely have evidentiary support
after a reasonable opportunity for further investigation or discovery; and (4) the
complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-
related papers may be served. I understand that my failure to keep a current
address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: November 22, 2022.

Signature of Plaintiff         _Alan Miller_

Printed Name of Plaintiff   Alan Miller

6

List of Defendant Names, Alan Miller Complaint November 2022

1.  John Hester

2.  Cindy Gustafson

3.  Hayley Williamson

4.  Shelly Aldean

5.  Barbara Cegavske

6.  Ashley Conrad-Saydah

7.  Jessica Diss

8.  Belinda Faustinos

9.  A.J. Bud Hicks

10. Alexis Hill

11. Vince Hoenigman

12. James Lawrence

13. Sue Novasel

14. Wesley Rice

15. Bill Yeates

Each of the following Defendants served as Tahoe Regional Planning Agency Governing Board members, except John Hester, who served as Interim Executive Director in mid-2022, during the time the actions associated with this Complaint took place.

Defendant No. 2

| | |
|---|---|
| Name | Cindy Gustafson |
| Job or Title | (Chair) Placer County Representative |
| Street Address City and County State and Zip Code | P.O. Box 4103 Auburn, Placer CA 95604 |
| Telephone Number | (530) 448-1069 |

Defendant No. 3

| | |
|---|---|
| Name | Hayley Williamson |
| Job or Title | (Vice Chair) Nevada At-Large Member |
| Street Address City and County State and Zip Code | P.O. Box 4661 Stateline, Douglas NV 89449 |
| Telephone Number | (608) 516-6028 |

Defendant No. 4

| | |
|---|---|
| Name | Shelly Aldean |
| Job or Title | Carson City Representative |
| Street Address City and County State and Zip Code | 504 West 5th Street Carson City NV 89703 |
| Telephone Number | (775) 885-8282 |

1  Defendant No. 5

2

3  Name                    Barbara Cegavske

4  Job or Title            Nevada Secretary of State

5  Street Address          101 No. Carson Street, Suite #3
   City and County         Carson City, Carson City
6  State and Zip Code      NV 89701-4786

7  Telephone Number        775-684-5708

8

9  Defendant No. 6

10
   Name                    Ashley Conrad-Saydah
11
   Job or Title            Governor of California Appointee
12
   Street Address          P.O. Box 191233
13 City and County         Sacramento, Sacramento
   State and Zip Code      CA 95819
14
   Telephone Number        (415) 846-7383
15

16
   Defendant No. 7
17
   Name                    Jessica Diss
18
   Job or Title            Nevada Governor Appointee
19
   Street Address          128 Greenridge Drive
20 City and County         Reno, Washoe
   State and Zip Code      NV 89509
21
   Telephone Number        775-848-4864
22

23

24

25

26

   List of TRPA Defendants          Alan Miller Complaint Nov 2022                    2 of 5

Defendant No. 8

| | |
|---|---|
| Name | <u>Belinda Faustinos</u> |
| Job or Title | <u>California Assembly Speaker Appointee</u> |
| Street Address City and County State and Zip Code | <u>8415 East Yarrow Street</u> <u>Rosemead, Los Angeles</u> <u>CA 91770</u> |
| Telephone Number | <u>626-614-4990</u> |

Defendant No. 9

| | |
|---|---|
| Name | <u>A.J. Bud Hicks</u> |
| Job or Title | <u>Presidential Appointee</u> |
| Street Address City and County State and Zip Code | <u>P.O. Box 2670</u> <u>Reno, Washoe</u> <u>NV 89505</u> |
| Telephone Number | <u>(775) 788-2000</u> |

Defendant No. 10

| | |
|---|---|
| Name | <u>Alexis Hill</u> |
| Job or Title | <u>Washoe County Commissioner, District 1</u> |
| Street Address City and County State and Zip Code | <u>695 Brown Street</u> <u>Reno, Washoe</u> <u>NV 89509</u> |
| Telephone Number | <u>(775) 447-3017</u> |

1   Defendant No. 11

2   Name                      Vince Hoenigman

3   Job or Title              Governor of California Appointee

4   Street Address            P.O. Box 247
    City and County           San Francisco, San Francisco
5   State and Zip Code        CA 94123

6   Telephone Number          (415) 474-2779

7

8   Defendant No. 12

9

10  Name                      James Lawrence

11  Job or Title              Nevada Dept. of Conservation and Natural Resources Representative

12  Street Address            901 S. Stewart Street, Ste. 1003
    City and County           Carson City, Carson City
13  State and Zip Code        NV 89701-5246

14  Telephone Number          (775) 684-2726

15

16  Defendant No. 13

17  Name                      Sue Novasel

18  Job or Title              El Dorado County Supervisor

19  Street Address            924-B Emerald Bay Road
    City and County           South Lake Tahoe, El Dorado County
20  State and Zip Code        CA 96150

21  Telephone Number          (530) 573-7918 or (530) 621-6577

22

23

24

25

26

Defendant No. 14

Name                    Wesley Rice

Job or Title            Douglas County Commissioner

Street Address          P.O. Box 218
City and County         Minden, Douglas
State and Zip Code      NV 89423

Telephone Number        (775) 742-9864


Defendant No. 15

Name                    Bill Yeates

Job or Title            California Senate Rules Committee Appointee

Street Address          3308 El Camino Avenue, Suite 300-223
City and County         Sacramento, Sacramento
State and Zip Code      CA 95821

Telephone Number        (916) 804-0924

## III. STATEMENT OF CLAIMS

Brief Overview and Context for the Project Claims: The Project is a Verizon Monopine Macrotower for wireless telecommunications, approved by the Tahoe Regional Planning Agency (TRPA) Governing Board members (BMs) on denial of administrative Appeal (by Eisenstecken, et al.) on March 23, 2022. This Complaint arises as a related, though independent, Appeal challenging approval of a Code exception for the Project following the lawsuit filed with this Court against the Project in the case Eisenstecken, et al. v. TRPA, et al. (**No. 2:20-CV-02349-TLN-CKD,** THIRD AMENDED COMPLAINT, PETITION FOR WRIT OF MANDATE, DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES; MONICA EISENSTECKEN, TAHOE STEWARDS, LLC, DAVID BENEDICT, TAHOE FOR SAFER TECH, ENVIRONMENTAL HEALTH TRUST, Plaintiffs, vs. TAHOE REGIONAL PLANNING AGENCY, JOANNE MARCHETTA, in her official and individual capacities, MARSHA BERKBIGLER, in her official and individual capacities, SUE NOVASEL, in her official and representative capacities, GULLIAM NEL, SACRAMENTO VALLEY LIMITED PARTNERSHIP dba VERIZON WIRELESS, CITY OF SOUTH LAKE TAHOE, and DOES 1-100, Defendants.) This subsequent independent filing is because on August 5, 2022 the TRPA Interim Executive Director issued a variance or exception to certain TRPA Code provisions by approving a major plan revision for the Project (from plans approved in March), which revision I (with others) appealed on a number of grounds. The Appeal was denied at a hearing before the TRPA Governing Board on September 28, 2022. Judicial review is sought because the Compact specifies the following in Article VI(j)(5):

"In any legal action filed pursuant to this subdivision which challenges an adjudicatory act or decision of the agency to approve or disapprove a project, the scope of judicial inquiry shall extend only to whether there was prejudicial abuse of discretion. Prejudicial abuse of discretion is established if the agency has not proceeded in a manner required by

law or if the act or decision of the agency was not supported by substantial evidence in light of the whole record. In making such a determination the court shall not exercise its independent judgment on evidence but shall only determine whether the act or decision was supported by substantial evidence in light of the whole record. In any legal action filed pursuant to this subdivision which challenges a legislative act or decision of the agency (such as the adoption of the regional plan and the enactment of implementing ordinances), the scope of the judicial inquiry shall extend only to the questions of whether the act or decision has been arbitrary, capricious or lacking substantial evidentiary support or whether the agency has failed to proceed in a manner required by law."

This matter is straightforward, resting on the actions in which the Agency has not proceeded in a manner required by law, often very arbitrarily and capriciously in light of the whole record, were it to be further exposed beyond the writings herein. This case meets all necessary requirements in Article VI(j) to be considered by this Court, and I am an "aggrieved" person under Article VI(j)(3), by having commented and testified on multiple occasions, exhausting all administrative remedies. Judicial review is sought because TRPA has been unresponsive to many legal concerns lodged in this matter. Without the approval of the major plan revision, the Project could not proceed as redesigned, though other designs not requiring such an exception were not legally precluded under the March 23, 2022 Project approval. It is on this basis that the Permit decision in the Appeal denial should be vacated and the tower should be ordered removed for being approved illegally. Beyond civil liability in the maximum amounts for violations that were knowing and willful or from gross negligence for failure to follow its own laws and regulations concerning permitting procedures, TRPA should be admonished particularly for its unprofessional and failed implementation in this case of its own environmental and ground water protection requirements, embodied in the limitations on excavation in excess of five feet and related requirements for soil and hydrologic reports meeting the legislated and regulatory intent

1    of protecting ground water in the Lake Tahoe region from interference due to development. As I

2    stated on pp. 1 – 3 of my Affidavit in support of the Appeal and stay request I filed with TRPA

3    on August 22, 2022,

4        "This Appeal is concerned with the August 5, 2022 staff letter misinterpreting and

5        misapplying the laws and regulations governing the Tahoe Regional Planning Agency

6        (TRPA) by the TRPA, as formalized in the Acknowledged Permit for the Project posted

7        online on August 19, 2022 in reliance on the August 5, 2022 staff letter. . . . On May 6,

8        2022 TRPA issued its Final Permit (per the file name in online documents) to Verizon for

9        the tower planned at 1360 Ski Run Boulevard, City of South Lake Tahoe, CA. . . . I

10       became concerned with impacts to ground water when I saw the August 5, 2022 staff

11       letter from TRPA approving revised Project plans for excavation to a depth of 13.5 feet,

12       lacking any stated evidentiary support or fact finding for the record of approval other than

13       citing Code sections. . . . The implication is that Verizon deliberately chose a relatively

14       benign foundation design with regard to potential ground water impacts for the

15       Environmental Review/Permitting/Appeal process, got to the end of that approval

16       process, and then changed the Project description expecting TRPA would work behind

17       the scenes to approve the significant design change before anyone noticed and the 21-day

18       statute of limitations for appealing the TRPA decision passed. . ."

19

20   Claim 1. John Hestor, Interim Executive Director at TRPA, on August 5, 2022 (through

21   delegated action by his staff) issued the exception to certain Code requirements for excavation in

22   excess of five feet in depth, or that may interfere with ground water, with plan revisions sought

23   by Sacramento Valley Limited Partnership dba Verizon Wireless (Verizon), to a depth of 13.5

24   feet, in violation of applicable approval requirements for an exception or variance, as discussed

25   in detail below. If that is where the matter had rested *sans* Appeal, many of these violations

26   would not have been uncovered.

**Claim 2.** The approval cited in Claim 1 constituted grounds for an Appeal before the governing Board. Such Appeal was timely filed by the Plaintiff on August 22, 2022, together with a stay request to halt any construction to depths greater than previously approved (7.5 feet) pending the outcome of the Appeal hearing anticipated on or about October 26, 2022. Pursuant to TRPA Rule of Procedure (ROP) section 11.3 a stay request must be responded to by the Agency's Board Chair "within two working days," thus a response was expected by August 24. On August 24, 2022, TRPA counsel forwarded without comment a letter from Verizon stating their proposal to limit only the pouring of the concrete for the tower foundation until a hearing before the Governing Board on September 28, 2022. On August 25, 2022, a day late, Chair Cindy Gustafson sent her reply, indicating that Verizon's proposal for a "partial stay" (as TRPA described Verizon's proposal) and September 28 hearing, would be granted, despite being contrary to law concerning timelines for hearing Appeals. Appellants considered the stay to be late and denied.

**Claim 3.** Concerning Chair Gustafson's reply, "In order to have the appeal put on the next Governing Board agenda, the written statement of appeal must be filed on or before the fifteenth day of the previous month." (ROP section 11.2) In this case, that was not done, the Appeal being filed on August 22, a week *after* the deadline. Therefore, the expectation with the filing under the law was that the Appeal hearing would be during the Board's regular meeting in October. Despite appeals to TRPA (which persisted through the Appeal hearing), and despite vigorous objections lodged, the Chair rushed the Appeal hearing forward by approximately one month to the next available Board meeting on September 28, 2022. This was as requested by Verizon, rather than adhering to October 26, 2022 per the rule. This violation of the ROP constitutes a violation of my civil rights to due process as codified in the TRPA ROP. This shortening of planned Appeal timelines caused extensive hardship in the presentation of our case, coordinating

testimony, and compromised the case by not allowing for sufficient time for preparation of the

Statement of Appeal and hearing, and for responding to reports and correspondence from TRPA

and Verizon, including unexpected concerns with scheduling. Everything was rushed (by 28

days) to meet TRPA administrative requirements, there being no alternative in the instant short

of a federal injunction.

Claim 4. Prior to issuing the staff approval letter (Claim 1) the TRPA did receive and process

from Verizon an application for a major plan revision involving deepening the tower foundation

and excavation by six feet more than the approved depth, to 13.5 feet. Condition 3.F. in the

permit specified the general requirements for the contemplated plan revision process that are

mirrored in the Code. TRPA has no separate online application process for "plan revision

applications" versus "new applications" so the application was filed and properly received as a

new application, though subsequently TRPA didn't treat it as such, thus leading to the Claim.

Code section 2.2.1 requires the following: "**2.2.1. Project Review** Activities that may have a

substantial effect on the land, air, water, space, or any other natural resources in the Tahoe region

are projects subject to TRPA review and approval. Projects shall be reviewed by TRPA in

accordance with TRPA's Rules of Procedure and pursuant to the applicable Code provisions.

Projects approved by TRPA shall be issued permits in accordance with the Rules of Procedure."

ROP section 5.2 sets forth requirements of a new application in parts 1. Through 8. The general

Claim is that certain fundamental requirements for a complete application for the plan revisions

were not met, so the application could not be reviewed in accordance with law, yet the TRPA

approved the plan revisions anyway. The incomplete application was not reviewed or cited for

deficiency, nor was the permit issued by TRPA in accordance with the ROP.

Claim 5. As noted in Claim 4, ROP section 5.2 specifies the requirements for contents of a

complete application. Among other things, an application fee as required by the adopted fee

schedule for a "major plan revision" must be paid; in review of the online information from TRPA there are a variety of different fees that have been paid and some in installments, such that it is difficult if not impossible for a layperson to tell whether the appropriate fee was paid. Other deficiencies are definite: ROP section 5.2.4. requires, "A dated signature, by or on behalf of the applicant, attesting under penalty of perjury to the truth, completeness, and accuracy of the contents of the application." Verizon is the agent for the landowner and there appears to be no such signature available in the record of the plan revisions application "on behalf of the applicant, attesting under penalty of perjury to the truth, completeness, and accuracy of the contents of the application" or same is in perjury for the deficient application.

Claim 6. A primary substantive requirement of a complete application is unmet, ROP section 5.2.6 requiring, "Appropriate environmental documentation, in accordance with Article 6 of these Rules;" in this case, the Applicant was required to complete and sign/certify an "Initial Environmental Checklist," or IEC, form devised by the Agency. This violation is particularly egregious, because the TRPA application process under the Code and ROP does not have provisions for acting in the absence of valid environmental documentation. In omitting the requirement TRPA relied on a 2019 IEC from the Applicant for the approved Project, without the Plan revisions, which is improper for not considering any new information since the original application was tendered in 2019. TRPA's prior Finding of No Significant Impact (FONSE) did not consider excavation to 13.5 feet below ground, as same was not proposed prior to 2022.

Claim 7. The purpose of the environmental documentation noted in Claim 6 is to inform a determination. Based on review of a valid IEC TRPA would determine whether to prepare an Environmental Assessment (EA) under ROP section 6.5. Then, section 6.6 provides, "If, based on the IEC or EA, and other available information, TRPA finds that a project or matter will not have a significant effect on the environment, a statement of such finding shall be placed in the

1  project file maintained by TRPA and no further environmental documentation shall be required.
2  See Section 3.5 of the Code." This is the minimum level of review and even that was not met.
3  There is no statement of such finding in the Project file other than the August 5, 2022 exception
4  letter with its unsupported assertions. It appears TRPA, in silent recognition of its error, then
5  twisted the law and changed the Appeal hearing procedure from that required <u>for granting</u>
6  <u>variances from the ordinances,</u> to that required <u>for approving a project.</u> (See Claim 12.) The latter
7  must be "supported by a statement of findings, adopted by the agency, which indicates that the
8  project complies with the regional plan and with applicable ordinances, rules and regulations of
9  the agency." The Project was already approved on March 23, 2022; only a variance for deeper
10  excavation was Appealed in August. TRPA thus re-approved the Project on the basis of no
11  relevant IEC, adding the above missing findings after-the fact at the September 28, 2022 Appeal
12  hearing.

14  <u>Claim 8.</u> ROP section 5.2.8. requires, "All reports or studies necessary to show compliance with
15  applicable provisions of the Compact, Regional Plan, Code, other TRPA plans, maps, programs,
16  and rules." The Claim is that these requirements, like section 5.2.6, were unmet. At particular
17  issue is that a soils and hydrology assessment report by a properly qualified professional was
18  NOT required, with content and methodology reviewed and approved in advance by TRPA, as
19  required by law. It will take additional text to explain the why these deficiencies are significant.

21  <u>Claim 9.</u> Code section 33.3.6.2. includes letters A and B as independent requirements. Each must
22  be met to approve an exception to section 33.3.6.2, irrespective of order. Though presentation is
23  altered, Section A states:

24  **"A. Groundwater Interception**

25  Groundwater interception or interference is prohibited except as set forth below:

26  1. Excavation is prohibited that interferes with or intercepts the seasonal high water table

by: a. Altering the direction of groundwater flow; b. Altering the rate of flow of ground water; c. Intercepting ground water; d. Adding or withdrawing ground water; or e. Raising or lowering the water table.

2. TRPA may approve exceptions to the prohibition of groundwater interception or interference if TRPA finds that: a. Excavation is required by the International Building Code (IBC) or local building code for minimum depth below natural ground for above ground structures; b. Retaining walls are necessary to stabilize an existing unstable cut or fill slope; c. Drainage structures are necessary to protect the structural integrity of an existing structure; d. It is necessary for the public safety and health; e. It is a necessary measure for the protection or improvement of water quality; f. It is for a water well; g. There are no feasible alternatives for locating mechanical equipment, and measures are included in the project to prevent groundwater from leaving the project area as surface flow, and any groundwater that is interfered with is rerouted in the ground water flow to avoid adverse impacts to riparian vegetation; . . . ."

However, section B requires:

**"B. Excavations**

Excavations in excess of five feet in depth or where there exists a reasonable possibility of interference or interception of a water table shall be prohibited unless TRPA finds that: 1. A soils/hydrologic report prepared by a qualified professional, which proposed content and methodology has been reviewed and approved in advance by TRPA, demonstrates that no interference or interception of groundwater will occur as a result of the excavation;

2. The excavation is designed such that no damage occurs to mature trees, except where tree removal is allowed pursuant to subsection 33.6.5: *Tree Removal*, including root systems and hydrologic conditions of the soil. To ensure the protection of vegetation necessary for screening, a special vegetation protection report shall be prepared by a

1    qualified professional identifying measures necessary to ensure damage will not occur as

2    a result of the excavation; and

3    3. Excavated material is disposed of pursuant to subsection 33.3.4: *Disposal of Materials*,

4    and the project area's natural topography is maintained pursuant to subparagraph

5    36.5.1.A. If groundwater interception or interference will occur as demonstrated by a

6    soils/hydrologic report prepared by a qualified professional, then the excavation can be

7    made as an exception pursuant to subparagraph 33.3.6.A.2, provided measures are

8    included in the project to maintain groundwater flows to avoid adverse impacts to SEZ

9    vegetation and to prevent any groundwater or subsurface water flow from leaving the

10    project area as surface flow."

11    Claim 9 is at the heart of the matter, for TRPA approved the plan revisions in the absence of

12    substantially meeting all of the above-cited requirements save for one: to apply their seemingly

13    unlimited discretion to approve the project on the basis of A.2.d., above, as "necessary for the

14    public health and safety," ignoring the whole of the record and/or assuming all other

15    requirements were somehow previously met or are irrelevant.

16

17    Claim 10. Land coverage limitations are established for each parcel in the TRPA jurisdiction,

18    thus land coverage is at the core of TRPA's land development regulatory program. Any

19    landowner seeking a change in land coverage must comply with the TRPA regulatory processes

20    and bring the property info full compliance with TRPA requirements as a condition of Project

21    approval. (See Code sections 30.2.1., 30.4 and 30.5, the latter concerning prohibitions on land

22    coverage increases on sensitive "1a" lands such as those on the Project site.) Though there are

23    provisions for purchasing or relocating existing coverage, if no coverage is available no change

24    is allowable under the regulations and many Projects have been denied permits on this basis. The

25    Claim here is the various plan sheets with the revised Approved Plans are inconsistent with

26    regard to the foundation dimensions, and moreover, inconsistent with allowed coverage – in

1   every case measured, over the allowed 736 square feet of approved coverage available to the
2   Project, in one case 29% over allowable. This is a basis for denying the Project approval, yet the
3   Project was approved anyway. The plan dimensions were not verified by TRPA. TRPA did not
4   verifiably refute that information on Appeal and approved the Project on Appeal with no
5   changes despite the coverage depicted in final plans which is over allowances. This is a gross
6   miscarriage of justice for all those thousands of permittees and prospective permittees who have
7   suffered to comply with TRPA coverage rules (including myself), an illegal act that makes a
8   mockery of the entire coverage/Permitting system, capriciously applied by TRPA for Verizon.

9

10   Claim 11. With regard to Claim 9, when TRPA was presented with the fact of its use of the
11   improper soils-hydrology report to assess ground water conditions it sought to cover its failures
12   after-the-fact by having a soil scientist from the TRPA staff go out and conduct not one, but two,
13   post-approval examinations of the soils in the excavated area. TRPA then used the reports at the
14   Appeal hearing, over objections of prejudice and conflicts of interest, as confirmation of the
15   appropriateness of its reliance on the initial, grossly deficient, soils-hydrology report prepared by
16   an unqualified geotechnical engineer. Claim 11 is that rather than requiring Verizon to provide a
17   legitimate soils-hydro report on the ground water conditions by a qualified soils scientist or
18   geohydrologist prior to approving of the plan revisions, TRPA used its own staff after the
19   approval to provide this information. This was done contrary to a conflict of interest requirement
20   in ROP section 8.4: "Employees shall not accept . . . present compensation or arrange for future
21   compensation for services already performed or to be performed, that give rise to an actual
22   conflict of interest or that create an appearance of a conflict of interest." The TRPA staff in this
23   matter is not free of the financial influence of its employer.

24

25   Claim 12. Voting Procedure. The TRPA Compact includes two different voting procedures
26   depending on the matter under consideration: This Claim is in response to counsel invoking the

incorrect Article in advising the BMs on the Appeal voting procedure: Compact Article III(g)(1) specifies,

> "(1) For adopting, amending or repealing environmental threshold carrying capacities, the regional plan, and ordinances, rules and regulations, and <u>for granting variances from the ordinances</u>, rules and regulations, the vote of at least four of the members of each State agreeing with the vote of at least four members of the other State shall be required to take action. If there is no vote of at least four of the members from one State agreeing with the vote of at least four members of the other State on the actions specified in this paragraph, an action of rejection shall be deemed to have been taken." (<u>emphasis</u> added)

The Appeal was lodged in opposition to the granting of a variance or exception to the ordinances in the Code associated with limitations on excavation and ground water interference. Thus, the Article above seems applicable. The expectation was that TRPA would defend its action based solely on the record on and prior to August 5, 2022. If the Appeal was upheld, the underlying March 23, 2022 Permit would remain in effect. However, the TRPA took the hearing in a different direction, over our objection, by invoking Compact Article III(g)(2), which was used by the BMs in the voting that occurred:

> "(2) For <u>approving a project</u>, the affirmative vote of at least five members from the State in which the project is located and the affirmative vote of at least nine members of the governing body are required. If at least five members of the governing body from the State in which the project is located and at least nine members of the entire governing body do not vote in favor of the project, upon a motion of approval, an action of rejection shall be deemed to have been taken. A decision by the agency <u>to approve a project</u> shall be supported by a statement of findings, adopted by the agency, which indicates that the project complies with the regional plan and with applicable ordinances, rules and regulations of the agency." (<u>emphasis</u> added)

1   Again, at the Appeal hearing TRPA provided no cogent explanation and made a special effort to

2   add missing findings as required above in an attempt to amend the record as needed to approve

3   the Project (with its exception). This was to approve the deep-foundation design chosen by

4   Verizon, which is NOT required by the International Building Code or local building code (see

5   Claim 9, section A.2.a), as a matter of convenience for Verizon, though the Project does not

6   comply as stated by TRPA. This hearing voting change was done improperly and is another

7   reason why the approval must be vacated. Clarity from the Court on this (recurring) matter of

8   TRPA changing hearing rules would be welcomed.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1    **IV. RELIEF**

2

3    <u>Background:</u> TRPA and its Governing Board members (BMs) are uniquely charged to protect

4    the extraordinary Lake Tahoe and its supporting environment while allowing for orderly

5    development in the Lake Tahoe Region. Pursuant to Compact Article VI.(b):

6        "No project other than those to be reviewed and approved under the special provisions

7        (d), (e), (f) and (g) may be developed in the region without obtaining the review and

8        approval of the agency and no project may be approved unless it is found to comply with

9        the regional plan and with the ordinances, rules and regulations enacted pursuant to a

10       subdivision (a) to effectuate that plan. The agency may approve a project in the region

11       only after making the written findings required by this subdivision or subdivision (g) of

12       Article V. Such findings shall be based on substantial evidence in the record."

13   In this case, the Project was approved on the basis of findings lacking substantial record

14   evidence, or otherwise not in accordance with law. The Compact provides the sole recourse to

15   relief from TRPA malfeasance and illegal actions in Article VI:

16       "(j) Legal actions arising out of or alleging a violation of the provisions of this compact,

17       of the regional plan or of an ordinance or regulation of the agency or of a permit or a

18       condition of a permit issued by the agency are governed by the following provisions:

19       (1) This subdivision applies to:

20       (A) Actions arising out of activities directly undertaken by the agency.

21       (B) Actions arising out of the issuance to a person of a lease, permit, license or other

22       entitlement for use by the agency.

23       (C) Actions arising out of any other act or failure to act by any person or public agency.

24       Such legal actions may be filed and the provisions of this subdivision apply equally in the

25       appropriate courts of California and Nevada and of the United States.

26       (2) Venue lies:

(A) If a civil or criminal action challenges an activity by the agency or any person which is undertaken or to be undertaken upon a parcel of real property, in the State or Federal judicial district where the real property is situated."

In this case the parcel of real property of interest (the tower parcel) is located in South Lake Tahoe, California, and TRPA, being established as a bi-state agency by an Act of the U.S. Congress, is therefore subject to Federal law as expressed in the Compact. The relief sought and damages claimed are contained in Compact Article VI:

"(l) Any person who violates any provision of this compact or of any ordinance or regulation of the agency or of any condition of approval imposed by the agency is subject to a civil penalty not to exceed $5,000. Any such person is subject to an additional civil penalty not to exceed $5,000 per day, for each day on which such a violation persists. In imposing the penalties authorized by this subdivision, the court shall consider the nature of the violation and shall impose a greater penalty if it was willful or resulted from gross negligence than if it resulted from inadvertence or simple negligence."

The TRPA Interim Executive Director and each BM is a person sworn to uphold the law and is thus liable, at a minimum, in an amount not to exceed $5000 for each violation cited in the Claims above. A prospective tally of damages by Claim is presented below. Insofar as the violations allowed the tower to be built following the Appeal denial, they are ongoing, particularly the matter of built coverage in excess of allowable coverage. Voiding the Project permit and requiring Project site restoration following removal of the tower, approved illegally, is specifically requested to show the Agency that it can't approve Projects or revisions to approved Projects with disregard for its own regulations and impunity to the law.

Claim 1 Damages: Violation 1 is issuance of the staff approval letter. This approval persisted (despite the stay denial) from August 5, 2022, without rescission on Appeal, to September 28,

1    2022, when it was ratified by the BMs denying the Appeal. 53 days of violation, August 5 – Sept
2    27. (53)

3    Claim 2 Damages: Violation 2 is being a day late with the stay response. One day of violation.
4    (1)

5    Claim 3 Damages: I suggest considering the potential civil liability in this way: From when the
6    Chair acted on August 25 to illegally advance the hearing, there were 35 days to September 28,
7    thus 35 days of violation by Chair Gustafson prior to the Appeal hearing. At the hearing, at
8    which time the BMs in full considered the Chair's action, the BMs each ratified the Chair's
9    decision by not postponing the Appeal hearing, thus accruing an additional violation of law for
10   each BM. Violation 3 is advancing the Appeal hearing; not one violation, but 35 days of
11   violation of the ROP requirement by the Chair, and one day of violation for each of the other
12   BMs. (50)

13   Claim 4 Damages: Violation 4 is one violation for the Interim Executive Director and on for each
14   BM approving the Project (plan revisions/Appeal denial) without proper review in violation of
15   Code section 2.1.1. (15)

16

17   Claim 5 Damages: Violation 5 is for TRPA's failure to cite a valid certification for the plan
18   revisions as an application deficiency, and to act in its absence, as discussed below. One
19   violation for the Interim Executive Director and for each BM approving the Project. (15)

20

21   Claim 6 Damages: Violation 6 is for TRPA's failure to cite the lack of a valid IEC for the plan
22   revisions as an application deficiency, and to act in its absence. While I would like to claim a
23   violation of each applicable unmet sub-requirement of the IEC (there are many), for Violation 6 I
24   will settle for one violation of the IEC requirement for a complete application for the Interim
25   Executive Director and for each BM approving the Project. (15)

26

Claim 7 Damages: Violation 7 is of the requirements to make appropriate findings pursuant to a valid IEC under ROP section 6.6. One violation for the Interim Executive Director and for each BM approving the Project. (15)

Claim 8 Damages: Violation 8 is TRPA's failure to cite the lack of a proper soils and hydrologic report by a qualified professional for the plan revisions as an application deficiency, and for issuing the approval on the basis of the deficient report. One violation for the Interim Executive Director issuing the Aug 5, 2022 approval, and one for each BM approving the Project. (15)

Claim 9 Damages: Violation 9 is approving an exception to Code section 33.3.6.2.A, based solely and improperly on requirements in section A.2.d. One violation accrues for the Interim Executive Director issuing the approval, and one violation for each BM affirming the Project plan revisions by Appeal denial. (15)

Claim 10 Damages: Violation 10 is for approving coverage in the final revised plans that exceeds allowable coverage. In the case the tower remains intact and in operation, relief sought for the ongoing coverage violation is in the amount of $5000 for each day the coverage violation persists, that is, until coverage is removed to bring new coverage on the parcel into compliance with allowances as verified by the Court after a report from an independent licensed California surveyor or civil engineer. The foundation/coverage was completed in early October 2022 and persists. One violation of the coverage requirement for the Project approval by the Interim Executive Director and for each BM approving the Project (15), with (50 + X) additional days of violation accruing liability up to $5000 per day.

Claim 11 Damages: Two staff reports were produced and used by senior management in preparing and prejudicing the Staff report and recommendation to deny the Appeal in violation

1  of conflict of interest rules. Two violations accrue to each BM for accepting the two reports in
2  violation of conflict of interest rules. (28)

3  Claim 12 Damages: A single violation for each BM voting to approve the Project under improper
4  voting procedures in Compact provision III(g)(2), and padding the record. (14)

5

6  I am an individual residing in South Lake Tahoe since 1993, where I was a regulator for the State
7  of California with expertise in water quality for over 25 years. My background is in civil and
8  environmental engineering, and my interest in this matter (affecting many other Projects) is in
9  protecting ground water resources tributary to Lake Tahoe, for protection of Lake Tahoe's water
10  quality and clarity. I am entitled to damages because I undertook to file the Appeal and exhaust
11  administrative remedies before resorting to remedies in judicial review and civil liability. So far
12  as I know, no other relief is available to me in this matter other than a remand back to the corrupt
13  Agency for a permitting do-over, not sought. Imposition of civil liability is sought for violations
14  of law to hold individuals responsible for their malfeasance and deter additional future
15  violations. The Compact enables persons "aggrieved" by the actions or inactions of TRPA to file
16  federal claims for relief, appropriately including civil liability damages from the persons
17  involved in committing the illegal acts, with no liability shield in the Compact, the sole
18  governing law, for BMs, the (Interim) Executive Director or staff.

19

20

21

22

23

24

25

26