| Name | ALAN MILLER |
|---|---|
| Street Address | P.O. BOX 7526 |
| City and County | S LAKE TAHOE, EL DORADO |
| State and Zip Code | CA 96158 |
| Telephone Number | (530) 542-0243 |



**FILED**

JAN 25 2023

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

---

ALAN MILLER

---

*(Write the full name of each plaintiff who is filing
this complaint. If the names of all the plaintiffs
cannot fit in the space above, please write "see
attached" in the space and attach an additional
page with the full list of names.)*

**-against-**

TAHOE REGIONAL PLANNING AGENCY

---

---

*(Write the full name of each defendant who is
being sued. If the names of all the defendants
cannot fit in the space above, please write "see
attached" in the space and attach an additional
page with the full list of names.)*

**Complaint for a Civil Case**

Case No. 2:22-cv-02113-KJM-AC
*(to be filled in by the Clerk's Office)*

Jury Trial:  ☐ Yes  ■ No
*(check one)*

## I.      The Parties to This Complaint

### A.      The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach
additional pages if needed.

| | |
|---|---|
| Name | Alan Miller |
| Street Address | P.O. Box 7526 |
| City and County | S. Lake Tahoe, El Dorado |
| State and Zip Code | CA 96158 |
| Telephone Number | (530) 542-0243 |

### B.      The Defendant(s)

Provide the information below for each defendant named in the complaint,
whether the defendant is an individual, a government agency, an organization, or
a corporation.  For an individual defendant, include the person's job or title (if
known).  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Tahoe Regional Planning Agency (TRPA) |
| Job or Title (if known) | |
| Street Address | P.O. Box 5310 |
| City and County | Stateline, Douglas |
| State and Zip Code | NV 89449 |
| Telephone Number | (775) 588-4547 |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title (if known) | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |

Defendant No. 3

| | |
|---|---|
| Name | _____ |
| Job or Title (if known) | _____ |
| Street Address | _____ |
| City and County | _____ |
| State and Zip Code | _____ |
| Telephone Number | _____ |

Defendant No. 4

| | |
|---|---|
| Name | _____ |
| Job or Title (if known) | _____ |
| Street Address | _____ |
| City and County | _____ |
| State and Zip Code | _____ |
| Telephone Number | _____ |

## II.    Basis for Jurisdiction

Federal Courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in Federal Court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same state as any plaintiff.

What is the basis for Federal Court jurisdiction?  *(check all that apply)*

■ Federal question          ☐ Diversity of citizenship

3

Fill out the paragraphs in this section that apply to this case.

**A.    If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

Tahoe Regional Planning Compact, Public Law 96-551 (94 STAT. 3233); and the Code of Ordinances, Rules of Procedure, and Tahoe Regional Plan adopted there-under.

**B.    If the Basis for Jurisdiction Is Diversity of Citizenship**

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

b.    If the plaintiff is a corporation

The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant, *(name)*_____, is a citizen of the State of *(name)* _____. *Or* is a citizen of *(foreign nation)* _____.

     b.      If the defendant is a corporation

The defendant, *(name)* _____, is
incorporated under the laws of the State of *(name)*
_____, and has its principal place of
business in the State of *(name)* _____.  *Or is*
incorporated under the laws of *(foreign nation)*
_____, and has its principal place of
business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an
additional page providing the same information for each additional
defendant.)*

3.      The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant
owes or the amount at stake—is more than $75,000, not counting interest
and costs of court, because *(explain)*:

_____
_____
_____

## III.   Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as
briefly as possible the facts showing that each plaintiff is entitled to the damages or other
relief sought.  State how each defendant was involved and what each defendant did that
caused the plaintiff harm or violated the plaintiff's rights, including the dates and places
of that involvement or conduct.  If more than one claim is asserted, number each claim
and write a short and plain statement of each claim in a separate paragraph.  Attach
additional pages if needed.

12 Primary Claims are included; please see pages attached briefing each Claim. The gen-
eral claim is that by denying an Appeal by Alan Miller (with others) of a Verizon permit
the TRPA Governing Board acted arbitrarily and capriciously, and in violation of many
applicable statutory and regulatory provisions, thus harming our interests in protection
of ground water quality in the Lake Tahoe region and Lake Tahoe water quality/clarity.

## IV.     Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to
order.  Do not make legal arguments.  Include any basis for claiming that the wrongs
alleged are continuing at the present time.  Include the amounts of any actual damages
claimed for the acts alleged and the basis for these amounts.  Include any punitive or
exemplary damages claimed, the amounts, and the reasons you claim you are entitled to
actual or punitive money damages.

Relief is requested to set aside the Appeal denial, revoke the Project permit and require
tower removal, and to also impose civil liabilities against TRPA for violations of the
Compact and use that to establish a court-appointed overseer in matters of Compact law.
See attached explanations and accounting. Potential civil liability estimated at $1,250,000.

## V.     Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my
knowledge, information, and belief that this complaint: (1) is not being presented for an
improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the
cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for
extending, modifying, or reversing existing law; (3) the factual contentions have
evidentiary support or, if specifically so identified, will likely have evidentiary support
after a reasonable opportunity for further investigation or discovery; and (4) the
complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-
related papers may be served.  I understand that my failure to keep a current
address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: January 22, 2023.

Signature of Plaintiff      _Alan Miller_____

Printed Name of Plaintiff    Alan Miller_____

## III. STATEMENT OF CLAIMS

<u>Brief Overview and Context for the Claims</u>: The Project is a Verizon Monopine Macrotower for wireless telecommunications, approved by the Tahoe Regional Planning Agency (TRPA) Governing Board members (BMs) on March 23, 2022 with denial of an administrative Appeal (by Eisenstecken, et al.). This Complaint arises as a related, though independent, Appeal challenging approval of a Code of Ordinances (Code) exception for the Project allowing a major plan revision proposed by Verizon following the lawsuit filed with this Court against the Project in the case *Eisenstecken, et al. v. TRPA, et al.* (No. 2:20-CV-02349-TLN-CKD)**,** now in its Third Amended Complaint (TAC). This subsequent independent filing is because on August 5, 2022 the TRPA Interim Executive Director issued the above-cited variance or exception approving a major plan revision for the Project (from plans approved in March 2022), which revision I (with others) appealed on a number of grounds. The Appeal was denied at a hearing before the TRPA Governing Board on September 28, 2022. Judicial review is sought because the Tahoe Regional Planning Compact (Compact) specifies the following in Article VI(j)(5):

> "In any legal action filed pursuant to this subdivision which challenges an adjudicatory act or decision of the agency to approve or disapprove a project, the scope of judicial inquiry shall extend only to whether there was prejudicial abuse of discretion. Prejudicial abuse of discretion is established if the agency has not proceeded in a manner required by law or if the act or decision of the agency was not supported by substantial evidence in light of the whole record. In making such a determination the court shall not exercise its independent judgment on evidence but shall only determine whether the act or decision was supported by substantial evidence in light of the whole record. In any legal action filed pursuant to this subdivision which challenges a legislative act or decision of the agency (such as the adoption of the regional plan and the enactment of implementing ordinances), the scope of the judicial inquiry shall extend only to the questions of

whether the act or decision has been arbitrary, capricious or lacking substantial evidentiary support or whether the agency has failed to proceed in a manner required by law."

This matter is straightforward, resting on the actions in which the Agency has failed to proceed in a manner required by law, often very arbitrarily and capriciously in light of the whole record, and acting with prejudicial abuse of discretion. The Defendant is the TRPA, as a juristic or juridical person. The actions of Interim Executive Director Hester and Board Chair Gustafson are discussed in their official capacities because as representatives of the agency their decisions are binding on the agency. They are noted principally to keep the stages and actors clear prior to the vote of the full Governing Board at the September Appeal hearing, and their actions can be construed as synonymous with those of the TRPA.

The reason for this amendment to the original Complaint is make changes to remove any natural human as a Defendant and instead name the juristic person TRPA as the sole Defendant. No summons has been served for the initial Complaint on any Defendant In addition, the amended Complaint proposes that any civil liability imposed would not accrue to me personally, but would instead be used to establish and fund, for a time, court-approved oversight of TRPA decisions involving Compact law, as the Court would establish. Further, new information has come to me since the original Complaint filing indicating the Project was built without the required approval of the Federal Communications Commission (FCC), as discussed below.

This case meets all necessary requirements in Compact Article VI(j) to be considered by this Court, and I am an "aggrieved" person under Article VI(j)(3), by having commented and testified on this Project on multiple occasions, exhausting all administrative remedies. My expressed concerns with the environmental effects are numerous for the unnecessary tower: electromagnetic radiation poisoning, increased fire threats, tower collapse, microplastic soil and water pollutants from tower camouflage, and adverse effects on threatened flora and fauna, to name just a few. Judicial review is sought because TRPA has been unresponsive to many legal,

policy and environmental concerns asserted in this matter. Without the approval of the major plan revision and Code exception, the Project could not have proceeded as redesigned, though other foundation designs not requiring such a Code exception were not legally precluded under the March 23, 2022 Project approval.

The theory of law applied here concerns continuing misfeasance in office by TRPA's officials in permitting Verizon to construct and operate a wireless cellular macro tower for the reasons already set forth in the TAC in *Eisenstecken, et al. v. TRPA, et al.* TRPA is violating its public fiduciary obligations under the Compact, and the agency has blatantly failed to proceed in a manner required by law. TRPA's action will result in specific harms to children and others in the playground directly under the Verizon macro cell tower, to Plaintiff David Benedict, and to Lake Tahoe because of discrete waste discharges of hazardous industrial microplastics into Lake Tahoe (subject of a present Petition to the California Regional Water Quality Control Board, Lahontan Region). To compound matters, Verizon has acted in flagrant defiance of FCC policy in building the tower, based on a January 2023 email from FCC attorney Georgios Leris. Unbeknownst to me, a request for FCC review of Verizon's application to the FCC for the Ski Run macrotower was filed by Eisenstecken years ago with the FCC. Construction was to await an FCC determination under the National Environmental Policy Act following a conclusion to litigation, a fact I learned only in recent days. TRPA is presumably aware of FCC policy, but rather than honor it TRPA actively enabled Verizon's illegal action, breaking many provisions of law to rush the Appeal hearing needed to complete the Project's foundation construction in 2022, and has effectively become a party to it. This further example documents in this specific case TRPA's pattern of misfeasance, negligence and complicity with Verizon to get the macrotower erected. Judicial review is sought because these acts and decisions comprise an arbitrary and capricious abuse of discretion, lacking evidentiary support in light of the whole record, and taken in a manner not in accordance with law.

It is on these bases that the Permit decision in the Appeal denial should be vacated and the tower should be ordered removed for being approved illegally, and with prejudicial abuse of discretion. I have standing and a legal right to raise this matter. Beyond civil liability for TRPA in the maximum amounts for violations that were knowing and willful or from gross negligence for failure to follow its own laws and regulations concerning permitting and appeal procedures, TRPA should be admonished in this case particularly for its unprofessional and failed implementation of its own environmental and ground water protection requirements. The latter are embodied in the limitations on excavation in excess of five feet and related requirements for soil and hydrologic reports meeting the legislated and regulatory intent of protecting ground water in the Lake Tahoe region from interference due to development. I became concerned with impacts to ground water when I saw the August 5, 2022 staff letter from TRPA approving revised Project plans for excavation to a depth of 13.5 feet, lacking any stated evidentiary support or fact finding for the record of approval other than citing Code sections. The implication in my view is that Verizon, perhaps in collusion with TRPA, deliberately chose a foundation design with lesser potential ground water impacts for the TRPA Environmental Review/Permitting/Appeal process, then later changed the Project description expecting TRPA would approve the significant design change before anyone noticed and the 21-day statute of limitations for appealing the subsequent TRPA approval decision passed.

Claim 1. Following the March 23, 2022 approval of its Final Permit, plan revisions were sought by Sacramento Valley Limited Partnership dba Verizon Wireless (Verizon). The proposed plan revisions for a larger, deeper foundation potentially violated applicable requirements to approve a Code exception or variance as discussed in detail below. On August 5, 2022, TRPA Interim Executive Director Hester (through delegated action by his staff) issued the exception to certain Code requirements for excavation in excess of five feet in depth or that may interfere with ground water through a staff letter simply asserting compliance with applicable requirements.

Judicial review is sought because this decision was an arbitrary and capricious abuse of discretion, lacking evidentiary support, and was not taken in a manner in accordance with law. If that is where the matter had rested *sans* Appeal, many of these violations would not have been uncovered.

Claim 2. The approval cited in Claim 1 constituted grounds for an Appeal before the governing Board. A Notice of Appeal was timely filed on August 22, 2022, together with a stay request to halt any tower foundation construction to depths greater than previously approved (7.5 feet) pending the outcome of the Appeal hearing, with other Project construction then occurring. Pursuant to TRPA Rules of Procedure (ROP or Rules) section 11.3 a stay request must be responded to by the Agency's Board Chair "within two working days," thus a response was expected by August 24. One response TRPA could have taken in response to the Notice of Appeal, with its lengthy Affidavit for stay purposes, was revocation of the August 5, 2022 staff letter and reconsideration of the Code exemption. That didn't happen. On August 24, 2022, TRPA General Counsel John Marshall forwarded without substantive comment a letter from Verizon stating a proposal to limit only the pouring of the concrete for the tower foundation, not the excavation Appealed, until a hearing before the Governing Board on September 28, 2022. To the Appellants, allowing the excavation ahead of the needed impact evaluation was anathema, contrary to the law and impact prevention. On August 25, 2022, a day late, Chair Gustafson sent her reply, indicating that Verizon's proposal for a "partial stay" (as TRPA described Verizon's proposal) and September 28 hearing would be granted, despite being premature and contrary to law concerning timelines for hearing Appeals, as further discussed in Claim 3, below. Appellants considered the stay to be late and denied, and to be completely separate from, and independent of, any hearing scheduling considerations, contrary to unsupported TRPA assertions. Judicial review is sought because this decision was prejudiced in favor of Verizon, an arbitrary and

capricious abuse of discretion, lacking evidentiary support and, being late, was not taken in a manner in accordance with law.

Claim 3. One must understand the regulatory timelines for TRPA Appeals to grasp Claim 3, due process excursions from law by TRPA concerning Appeal hearing scheduling. Under ROP or Rules section 11 requirements, after a Notice of Appeal is filed the Appellant has 30 days to file a Statement of Appeal (SOA). The SOA can be filed in less than 30 days, and if not filed within 30 days the Appeal is dismissed. Calendaring of the Appeal hearing is based on when the SOA is filed: "In order to have the appeal put on the next Governing Board agenda, the written statement of appeal must be filed on or before the fifteenth day of the previous month." (ROP section 11.2) As of August 25, 2022 only a Notice of Appeal had been filed. The Chair's response did not await the filing of the SOA as required by law; contrary to section 11.2, TRPA scheduled the hearing on September 28, 2022 on the basis of the Notice of Appeal alone. Further, TRPA's General Counsel Marshall wrote email requesting a SOA be filed on or before September 1, 2022, one week after the Notice of Appeal was filed, for TRPA administrative purposes and consideration at the September 28 hearing they proposed. By law, the SOA was due before September 22: If filed before September 15, the hearing would calendar to the regular Board meeting on October 26. If filed on or after September 15 the hearing would calendar to the regular Board meeting of November 16.

The Appellant's expectation under the law with the Notice of Appeal filing was that the Appeal hearing would be during the Board's regular meeting on November 16. In response to TRPA's illegal scheduling and bullying a SOA was filed several days ahead of September 15, under objection and duress. Therefore, the earliest meeting the hearing could be legally calendared on was October 26. Had this illicit rush not been the circumstance, the Appellants fully intended to utilize the time available and file the SOA on or just before the due date, but after September 15, and prepare for a hearing on November 16. Despite insistent appeals to

TRPA (which persisted through the Appeal hearing), and despite vigorous objections lodged, the Chair did rush the Appeal hearing forward to the next available Board meeting on September 28, 2022, only 36 days after the SOA was filed.

This Rule violation was as requested by Verizon, rather than adhering to any calendaring Rule. And why was that? Because Verizon was coming to the regulatory close of the construction season, from October 15 – May 1. To avoid making Verizon wait, possibly until May 2023 to complete construction of the deepened tower foundation, TRPA threw out the rules and set the hearing date of September 28 to allow time for Verizon to complete tower foundation construction prior to October 15. It is germane to report here that Verizon's construction was behind schedule due to TRPA ignoring the Appeal hearing calendaring rules earlier in the year on the Project Appeal by Eisenstecken, et al. In that Appeal, rather than pushing the hearing schedule forward illegally (84 days), TRPA illegally *delayed* the hearing without explanation by some 60 days from January 23 to March 23, 2022, solely for the benefit of Verizon and itself, to develop a response to the Appeal and insert additional evidence in the hearing record not in the prior record of approval. This example is like a textbook case in blatant arbitrary and capricious agency behavior, delaying one Appeal hearing, advancing another, same Project, same year, both scheduled and conducted illegally on behalf of it telecom client, disregarding of the rights of any detractors. Judicial review is sought because this decision to advance the Appeal hearing date was an arbitrary and capricious abuse of discretion, prejudicial in favor of Verizon, lacking evidentiary support and, being early, was not taken in a manner in accordance with law.

The August 25, 2022 Chair's late response denying the stay request and subsequent violation of the ROP section 11 scheduling requirements, proceeding in a manner not in accordance with law, constitutes a violation of my civil rights to due process as codified in the TRPA ROP. This shortening of planned Appeal timelines caused extensive hardship in the presentation of our case, in developing documentation, and in coordinating testimony, including before the TRPA Legal Committee. TRPA's actions compromised the case by not allowing

sufficient time for preparation of the SOA and hearing presentations, all the while responding to reports and scheduling correspondence from TRPA's General Counsel under the rushed agenda, there being no alternative in the instant short of a federal injunction.

Claim 4. This Claim concerns TRPA's failure to address Verizon's application deficiencies prior to approval. Prior to issuing the staff approval letter (Claim 1) the TRPA did receive and process from Verizon an application for a major plan revision involving deepening the tower foundation and excavation by six feet more than the approved depth, to 13.5 feet. Condition 3.F. in the permit specified the general requirements for the contemplated plan revision process that are mirrored in the Code and ROP. TRPA has no separate online application process for "plan revision applications" versus "new applications" so the application was filed and properly received as a new application; the claim is TRPA didn't subsequently treat it as such.

Code section 2.2.1 requires the following: **"2.2.1. Project Review** Activities that may have a substantial effect on the land, air, water, space, or any other natural resources in the Tahoe region are projects subject to TRPA review and approval. Projects shall be reviewed by TRPA in accordance with TRPA's Rules of Procedure and pursuant to the applicable Code provisions. Projects approved by TRPA shall be issued permits in accordance with the Rules of Procedure." ROP section 5.2 sets forth requirements for a new application in parts 1. through 8. The general Claim is that certain fundamental requirements for a complete application for the plan revisions were not met, so the application could not be reviewed in accordance with law, yet the TRPA approved the plan revisions anyway, prejudicially on behalf of Verizon. Judicial review is sought because this decision was an arbitrary and capricious abuse of discretion, lacking evidentiary support, and was not taken in a manner in accordance with law. The incomplete application was not cited for deficiency in these regards, nor was the Code exception issued by TRPA in accordance with the ROP.

Claim 5. As noted in Claim 4, ROP section 5.2 specifies the requirements for contents of a complete application. Among other things, an application fee as required by the adopted fee schedule for a "major plan revision" must be paid; in review of the online information from TRPA there are a variety of different fees that have been paid and some in installments, such that it is difficult if not impossible for a layperson to tell whether the appropriate fee was paid. Other deficiencies are definite: ROP section 5.2.4. requires, "A dated signature, by or on behalf of the applicant, attesting under penalty of perjury to the truth, completeness, and accuracy of the contents of the application." Verizon is the agent for the landowner and there appears to be no such signature available in the record of the plan revisions application "on behalf of the applicant, attesting under penalty of perjury to the truth, completeness, and accuracy of the contents of the application" or same is in perjury for the deficient application. Judicial review is sought because the prejudicial decision to act on the unsigned, incomplete application was an arbitrary and capricious abuse of discretion, lacking evidentiary support, and was not taken in a manner in accordance with law.

Claim 6. A primary substantive requirement of a complete application was unmet, ROP section 5.2.6 requiring, "Appropriate environmental documentation, in accordance with Article 6 of these Rules;" in this case, the Applicant was required to complete and sign/certify an "Initial Environmental Checklist," or IEC, form devised by the TRPA. This violation is particularly egregious, because the TRPA application process under the Code and ROP does not have provisions for taking final Permit actions in the absence of valid environmental documentation. In omitting the requirement TRPA relied on a 2019 IEC from the Applicant for the approved Project, without the plan revisions, which is improper for not considering any new information since the original application was tendered in 2019. TRPA's prior Finding of No Significant Impact did not evaluate potential adverse environmental effects for the proposed excavation to 13.5 feet below ground, as same was not proposed prior to 2022. Judicial review is sought

because the decision and action to approve the Project with the major plan revision in the absence of required environmental documentation and reports was discretionarily prejudging and dismissing potentially significant effects in an arbitrary and capricious abuse of discretion, lacking evidentiary support, and was not taken in a manner in accordance with law.

Claim 7. The purpose of the environmental documentation noted in Claim 6 is to inform a determination. Based on review of a valid IEC TRPA is required to determine whether to prepare an Environmental Assessment (EA) under ROP section 6.5. Then, section 6.6 provides, "If, based on the IEC or EA, and other available information, TRPA finds that a project or matter will not have a significant effect on the environment, a statement of such finding shall be placed in the project file maintained by TRPA and no further environmental documentation shall be required. See Section 3.5 of the Code." This is the minimum level of review and even that was not met. There is no "statement of such finding" in the Project file other than the August 5, 2022 exception letter with its unsupported assertions. It appears TRPA, in silent recognition of its error, then twisted the law and changed the Appeal hearing procedure from that required <u>for granting variances from the ordinances</u> to that required<u> for approving a project</u>. (See Claim 12.) The latter must be "supported by a statement of findings, adopted by the agency, which indicates that the project complies with the regional plan and with applicable ordinances, rules and regulations of the agency." The Project and Final Permit was already approved on March 23, 2022; only a variance for deeper excavation was Appealed based on the August 5 staff letter. TRPA thus re-approved the Project (with its Code exception) on the basis of no relevant IEC, improperly adding above-required but missing findings after-the-fact at the September 28, 2022 Appeal hearing. Judicial review is sought because the actions taken to change the scope of the Appeal hearing to cover its deficiencies under ROP section 6.5 in initially and finally approving the Project was an arbitrary and capricious abuse of discretion, prejudicial in favor of Verizon, lacking evidentiary support in the record, and was not taken in a manner in accordance with law.

<u>Claim 8.</u> ROP section 5.2.8. requires for new applications, "All reports or studies necessary to show compliance with applicable provisions of the Compact, Regional Plan, Code, other TRPA plans, maps, programs, and rules." The Claim is that these requirements were unmet. At particular issue is that a soils and hydrology assessment report by a properly qualified professional was NOT required, with content and methodology reviewed and approved in advance by TRPA, as required by law. It will take additional text (Claim 9) to explain the why these deficiencies are significant. Judicial review is sought because the TRPA decision not to require the report from Verizon, as cited above, was a prejudicial, arbitrary and capricious abuse of discretion, lacking evidentiary support, and was not taken in a manner in accordance with law.

<u>Claim 9.</u> Concerning excavation that may interfere with ground water, Code section 33.3.6.2. includes letters A and B as independent requirements. Each must be met to approve an exception to section 33.3.6.2, irrespective of order. Though presentation is altered, Section A states:

"**A. Groundwater Interception**

Groundwater interception or interference is prohibited except as set forth below:

1. Excavation is prohibited that interferes with or intercepts the seasonal high water table by: a. Altering the direction of groundwater flow; b. Altering the rate of flow of ground water; c. Intercepting ground water; d. Adding or withdrawing ground water; or e. Raising or lowering the water table.

2. TRPA may approve exceptions to the prohibition of groundwater interception or interference if TRPA finds that: a. Excavation is required by the International Building Code (IBC) or local building code for minimum depth below natural ground for above ground structures; b. Retaining walls are necessary to stabilize an existing unstable cut or fill slope; c. Drainage structures are necessary to protect the structural integrity of an existing structure; d. It is necessary for the public safety and health; e. It is a necessary measure for the protection or improvement of water quality; f. It is for a water well; g.

There are no feasible alternatives for locating mechanical equipment, and measures are included in the project to prevent groundwater from leaving the project area as surface flow, and any groundwater that is interfered with is rerouted in the ground water flow to avoid adverse impacts to riparian vegetation; . . . ."

However, section B requires:

**"B. Excavations**

Excavations in excess of five feet in depth or where there exists a reasonable possibility of interference or interception of a water table shall be prohibited unless TRPA finds that:

1. A soils/hydrologic report prepared by a qualified professional, which proposed content and methodology has been reviewed and approved in advance by TRPA, demonstrates that no interference or interception of groundwater will occur as a result of the excavation;

2. The excavation is designed such that no damage occurs to mature trees, except where tree removal is allowed pursuant to subsection 33.6.5: *Tree Removal*, including root systems and hydrologic conditions of the soil. To ensure the protection of vegetation necessary for screening, a special vegetation protection report shall be prepared by a qualified professional identifying measures necessary to ensure damage will not occur as a result of the excavation; and

3. Excavated material is disposed of pursuant to subsection 33.3.4: *Disposal of Materials*, and the project area's natural topography is maintained pursuant to subparagraph 36.5.1.A. If groundwater interception or interference will occur as demonstrated by a soils/hydrologic report prepared by a qualified professional, then the excavation can be made as an exception pursuant to subparagraph 33.3.6.A.2, provided measures are included in the project to maintain groundwater flows to avoid adverse impacts to SEZ vegetation and to prevent any groundwater or subsurface water flow from leaving the project area as surface flow."

Claim 9 is at the heart of the matter, for TRPA approved the plan revisions in the absence of substantially meeting all of the above-cited requirements save for one: to apply their seemingly unlimited discretion to approve the Project change on the basis of A.2.d., above, as "necessary for the public health and safety," dismissing without substantive comment the whole of the health and safety record presented in favor of anecdotal comments and/or assuming all other requirements were somehow previously met or are irrelevant. The facts will show they were not and are not. In the Miller et al. Appeal, evidence was presented to show why the Project with its plan revisions did not meet Code section 33.3.6.2. requirements, and further that snow loading was not included by the engineers designing the tower against collapse, a grievous safety error. Challenged to dispute the latter fact, neither Verizon or TRPA (or the City of South Lake Tahoe permit division) offered any information to refute or address the concerns and engineering information. This is a dangerous and prejudicial abuse of discretion with no record support. Judicial review is sought because this decision to act on the basis of A.2.d. without addressing co-requirements was an arbitrary and capricious abuse of discretion, lacking evidentiary support in light of the whole record, and was not taken in a manner in accordance with law.

Claim 10. With regard to Claim 9, when TRPA was presented with the fact of its use of the improper soils-hydrology report to assess ground water conditions it sought to cover its failures after-the-fact by having a soil scientist under contract with the TRPA conduct not one, but two, post-approval examinations of the soils in the excavated area prior to the Appeal Hearing. TRPA then used the reports at the Appeal hearing, over objections of prejudice and conflicts of interest, as confirmation of the appropriateness of its reliance on the initial, grossly deficient, soils-hydrology report prepared by an unqualified geotechnical engineer. Claim 11 is that rather than making Verizon provide a legitimate soils-hydro report on the ground water conditions by a qualified soils scientist or geohydrologist as part of a complete application prior to approving of the plan revisions, as required, TRPA used the deficient soils-hydro report for

the approval, then used its own contract employee after the approval to provide the validating information. This was done contrary to a conflict of interest requirement in ROP section 8.4: "Employees shall not accept . . . present compensation or arrange for future compensation for services already performed or to be performed, that give rise to an actual conflict of interest or that create an appearance of a conflict of interest." The interpretation of "employee" is in the vernacular here, a person who works for another, generally for wages or other valuable compensation. The TRPA employee in this matter is not free of the financial influence of its employer, which creates the appearance of a conflict of interest, at a minimum, an abuse of discretion that prejudiced the outcome of the Appeal hearing. Judicial review is sought because this decision to violate conflict of interest Rules was an arbitrary and capricious abuse of discretion and the TRPA proceeded in a manner not in accordance with law.

Claim 11. Land coverage limitations are established for each parcel in the TRPA jurisdiction, thus land coverage is at the core of TRPA's land development regulatory program. Any landowner seeking a change in their impervious land coverage must comply with the TRPA regulatory processes and bring the property into full compliance with TRPA requirements as a condition of Project approval. (See Code sections 30.2.1., 30.4 and 30.5, the latter concerning prohibitions on land coverage increases on steep, sensitive lands such as those on the Project site.) Though there are provisions for purchasing or relocating existing coverage, if no coverage is available no change is allowable under the regulations and many Projects have been denied permits on this basis. The Claim here is the various plan sheets with the revised Approved Plans are inconsistent with regard to the foundation dimensions, and moreover, inconsistent with allowed coverage – in every case measured, over the allowed 736 square feet of approved coverage available to the Project, in one case 29% over allowable. This is a basis for denying the Project approval, yet the Project was approved anyway. The plan dimensions were not verified by TRPA nor did TRPA verifiably refute the information on Appeal asserting excess impervious

coverage, with TRPA staff claiming not to understand the information and erring in claiming the foundation is not coverage (it is). The Project was approved on Appeal with no changes despite the coverage depicted in final plans which is over allowances. This is a gross miscarriage of justice for all those thousands of permittees and prospective permittees who have suffered to comply with TRPA coverage rules (including myself), an illegal act that makes a mockery of the entire coverage/Permitting system, capriciously applied by TRPA for Verizon. Judicial review is sought because the prejudicial decision to approve the Project with its excess impervious coverage was an arbitrary and capricious abuse of discretion, lacking evidentiary support in light of the whole record, and TRPA here proceeded in a manner not in accordance with law.

Claim 12. Voting Procedure. The TRPA Compact includes two different voting procedures depending on the matter under consideration: This Claim is in response to counsel invoking, and the Governing Board accepting, the incorrect Article in advising the BMs on the Appeal voting procedure: Compact Article III(g)(1) specifies,

> "(1) For adopting, amending or repealing environmental threshold carrying capacities, the regional plan, and ordinances, rules and regulations, and for granting variances from the ordinances, rules and regulations, the vote of at least four of the members of each State agreeing with the vote of at least four members of the other State shall be required to take action. If there is no vote of at least four of the members from one State agreeing with the vote of at least four members of the other State on the actions specified in this paragraph, an action of rejection shall be deemed to have been taken." (emphasis added)

The Appeal was lodged in opposition to the granting of a variance or exception to the ordinances in the Code associated with limitations on excavation and ground water interference (see Claim 8). Thus, the Article above is applicable. The expectation was that TRPA would defend its Code exception with the plan revisions based solely on the record on and prior to August 5, 2022. The

underlying March 23, 2022 Permit would remain in effect, all other construction continuing with the exception of the matters under Appeal.

However, the TRPA took the hearing in a different direction, over our objection, by invoking Compact Article III(g)(2), which was used by the BMs in the voting that occurred:

> "(2) For approving a project, the affirmative vote of at least five members from the State in which the project is located and the affirmative vote of at least nine members of the governing body are required. If at least five members of the governing body from the State in which the project is located and at least nine members of the entire governing body do not vote in favor of the project, upon a motion of approval, an action of rejection shall be deemed to have been taken. A decision by the agency to approve a project shall be supported by a statement of findings, adopted by the agency, which indicates that the project complies with the regional plan and with applicable ordinances, rules and regulations of the agency." (emphasis added)

Again, my understanding is the Project was approved in March 2022, and the Code exception was the only matter that required a subsequent approval on Appeal. The Appeal vote was to be a simple yes or no on whether the deepened excavation exception was properly approved on August 5, 2022. If not, construction could proceed as planned or another design to 7.5 feet deep could be developed.

At the Appeal hearing TRPA provided no cogent legal explanation for use of the above-cited Article III(g)(2), despite our objection, and certain BMs made a seemingly orchestrated effort to add missing findings (as required in III(g)(1) above) to improperly amend the Project record as needed to approve the Project with its exception. This was more like a "limited Permit reopener" to approve, as a matter of convenience for Verizon, the deep-foundation design chosen by Verizon. Even so, the Project approval fails: The deeper foundation is not required by the International Building Code or local building code (see Claim 9, section A.2.a), and the facts will show the Project did not comply with applicable requirements as stated by TRPA per the Claims

above. Judicial review is sought because Appeal hearing voting was done improperly and is another reason why the Project approval must be vacated. This decision to apply Article III(g)(2) was prejudicial, arbitrary and capricious abuse of discretion, lacking evidentiary support, and was taken in a manner that did not proceed in accordance with law.

# IV. RELIEF

<u>Background:</u> TRPA, through its staff and Board members (BMs), is uniquely charged to protect the extraordinary Lake Tahoe and its supporting environment while allowing for orderly development in the Lake Tahoe Region under established rules and procedures. Pursuant to Compact Article VI.(b): "No project other than those to be reviewed and approved under the special provisions (d), (e), (f) and (g) may be developed in the region without obtaining the review and approval of the agency and no project may be approved unless it is found to comply with the regional plan and with the ordinances, rules and regulations enacted pursuant to a subdivision (a) to effectuate that plan. The agency may approve a project in the region only after making the written findings required by this subdivision or subdivision (g) of Article V. Such findings shall be based on substantial evidence in the record." In this case, the Project was approved on the basis of findings lacking substantial record evidence, or otherwise not in accordance with law. Thus, judicial review of the approval is sought. In addition, the Compact provides the avenue for relief from TRPA malfeasance and illegal actions in Article VI:

"(j) Legal actions arising out of or alleging a violation of the provisions of this compact, of the regional plan or of an ordinance or regulation of the agency or of a permit or a condition of a permit issued by the agency are governed by the following provisions:

(1) This subdivision applies to:

(A) Actions arising out of activities directly undertaken by the agency.

(B) Actions arising out of the issuance to a person of a lease, permit, license or other entitlement for use by the agency.

(C) Actions arising out of any other act or failure to act by any person or public agency. Such legal actions may be filed and the provisions of this subdivision apply equally in the appropriate courts of California and Nevada and of the United States.

(2) Venue lies:

    (A) If a civil or criminal action challenges an activity by the agency or any person which

    is undertaken or to be undertaken upon a parcel of real property, in the State or Federal

    judicial district where the real property is situated."

In this case the parcel of real property of interest (the tower parcel) is located in South Lake Tahoe, California, and TRPA, being established as a bi-state agency by an Act of the U.S. Congress, is therefore subject to federal law as expressed in the Compact. The relief sought and damages claimed are contained in Compact Article VI:

    "(l) Any person who violates any provision of this compact or of any ordinance or

    regulation of the agency or of any condition of approval imposed by the agency is subject

    to a civil penalty not to exceed $5,000. Any such person is subject to an additional civil

    penalty not to exceed $5,000 per day, for each day on which such a violation persists. In

    imposing the penalties authorized by this subdivision, the court shall consider the nature

    of the violation and shall impose a greater penalty if it was willful or resulted from gross

    negligence than if it resulted from inadvertence or simple negligence."

The TRPA is a juristic or juridical person charged to uphold the law and is thus liable, at a minimum, in an amount not to exceed $5000 for each violation cited in the Claims above. This Complaint does not seek imposition of liability against any living people, but rather against the TRPA as a juridical person, including for the actions of its officials. All TRPA officials must swear an oath to uphold the laws upon assuming duties. Interim Executive Director Hester and Board Chair Gustafson took actions binding on the agency prior to the Appeal hearing, at which the BMs acted. Judicial review is sought in determining relief because these official acts and decisions were an arbitrary and capricious abuse of discretion, lacking evidentiary support of the whole record, or did not proceed in a manner in accordance with law. A prospective tally of damages by Claim is presented below. Insofar as the violations allowed the tower to be built

following the Appeal denial, they are ongoing. The tower with its coverage in excess of allowable coverage should never have been built. Fraud and malfeasance vitiates the Project approval. Voiding the Project permit and requiring Project site restoration to a semblance of its pre-Project condition following removal of the tower is specifically requested pending conclusion of the Eisenstecken litigation and FCC review and determination, to show the Agency that it can't approve projects or revisions to approved projects, as here, with disregard for its own regulations and impunity to the law.

Claim 1 Damages: Violation 1 is issuance of the staff approval letter. Without rescission on Appeal this approval persisted (despite the stay denial) from August 5, 2022, to September 28, 2022, when it was ratified by the Governing Board vote denying the Appeal. 53 days of violation, August 5 – Sept 27. (53)

Claim 2 Damages: Violation 2 is Chair Gustafson being a day late with the stay response. One day of violation. (1)

Claim 3 Damages: Violation 3 is advancing the Appeal hearing. I suggest considering the potential civil liability in this way: From when the Chair acted on August 25 to illegally advance the hearing, there were 84 days to November 16, 2022, the legal date to calendar the Appeal hearing at a regular scheduled Governing Board meeting had the Statement of Appeal been filed after September 15, 2022 (as planned and allowed), thus 84 days of violation prior to and on the Appeal hearing date. Under TRPA duress and Appellant objections, the Statement of Appeal was filed prior to September 15, 2022; before that date, the earliest the hearing could be legally calendared would have been the next regular Governing Board meeting on October 26, 2022. There are 73 days from August 25 to October 26, or 73 days of violation, depriving us of our Appeal rights, at a minimum. At the hearing, at which time the BMs in full considered the Chair's action, the Chair's decision was ratified by not postponing the Appeal hearing. Since the early filing of the Statement of Appeal was made under duress, I assert damages for the Chair

advancing the Appeal hearing by 84 days in violation of the ROP requirement and the Governing Board voting to deny the Appeal despite the rushed hearing date. (84)

Claim 4 Damages: Violation 4 is for the agency approving the Project (plan revisions/Appeal denial) without proper review in violation of Code section 2.1.1. One violation for issuing the August 5, 2022 staff letter under the Interim Executive Director's appealable approval and one for the final agency action to deny the Appeal. (2)

Claim 5 Damages: Violation 5 is for TRPA's failure to cite the lack of a valid certification under penalty of perjury for the plan revisions as an application deficiency, and to act in its absence, as discussed below. One violation for the Interim Executive Director's appealable approval and one violation for the final agency approval of the Project (Appeal denial). (2)

Claim 6 Damages: Violation 6 is for TRPA's failure to cite the lack of a valid Initial Environmental Checklist (IEC) for the plan revisions as an application deficiency, and for acting in its absence. While asserting violation of each applicable unmet sub-requirement of the IEC (there are many), I will account here for one violation for the Interim Executive Director's appealable approval and one violation for the final agency approval of the Project (Appeal denial). (2)

Claim 7 Damages: Violation 7 is of the requirements to make appropriate findings pursuant to a valid IEC under ROP section 6.6. One violation for the Interim Executive Director's appealable approval and one violation for the final agency approval of the Project (Appeal denial). (2)

Claim 8 Damages: Violation 8 is TRPA's failure to cite the lack of a proper soils and hydrologic report by a qualified professional for the plan revisions as an application deficiency, and for issuing the August 5, 2022 approval on the basis of the deficient report. One violation for the Interim Executive Director's appealable approval and one violation for the final agency approval of the Project (Appeal denial). (2)

Claim 9 Damages: Violation 9 is approving an exception to Code section 33.3.6.2.A, based solely and improperly on requirements in section A.2.d. One violation for the Interim Executive Director's appealable approval and one violation for the final agency approval of the Project (Appeal denial). (2)

Claim 10 Damages: Two reports were produced by a consultant employed by TRPA and were used by TRPA senior management in preparing the Staff report and prejudicing the recommendation to deny the Appeal. Two violations accrue for accepting the two reports to support the Appeal denial in violation of conflict of interest rules for "employees." (2)

Claim 11 Damages: Violation 11 is approving impervious coverage in the final revised plans exceeding allowable coverage. In the case the tower remains intact and in operation, relief sought for the ongoing coverage violation is in the amount of $5000 for each day the coverage violation persists, that is, until coverage is removed to bring coverage on the parcel into compliance with allowances as verified by the Court after an investigation and report from an independent licensed California surveyor or civil engineer. The foundation/coverage was completed in early October 2022 and persists. Violations are therefore continuing daily, with approximately 95 days of violation as of this writing, accruing liability up to $5000 per day. In addition to the post-construction daily violations, one violation for the Interim Executive Director's appealable approval and one violation for the final agency approval of the Project (Appeal denial). (97)

Claim 12 Damages: One violation accrues for the agency voting approve the Project by denying the Appeal under improper voting procedures in Compact provision III(g)(2), and padding the record with additional findings not in the Interim Executive Director's original record of approval, or the record for the approved Final Permit prior to the Appealed plan revisions. (1)

Imposition of civil liability on a per day basis is requested for each day the TRPA has been allowing the Verizon macrotower to be operating, also in violation of FCC policy, for a

present total estimated as follows: 250 Total Violations (days) x $5000/day = $1,250,000 potential civil liability.

I am an individual residing in South Lake Tahoe since 1993, where I was a regulator for the State of California with expertise in water quality for over 25 years. My background is in civil and environmental engineering, and my interest in this matter (affecting many other Projects) is in protecting surface and ground water resources tributary to Lake Tahoe, for protection of Lake Tahoe's water quality and clarity, through the integrity of the TRPA permitting processes. I am entitled to damages because I undertook to file the Appeal and exhaust administrative remedies before resorting to remedies in judicial review and civil liability. So far as I know, no other relief is available to remedy TRPA's egregious acts in this matter. Changes from the Project have already damaged the environment. With tower removal, much of the damage can be reversed or prevented in the future.

Judicial review is sought for the acts and decisions constituting a prejudicial, arbitrary and capricious abuse of discretion, lacking evidentiary support, or not proceeding in a manner in accordance with law. Imposition of civil liability is sought for violations of law to hold the TRPA accountable for the misfeasance and the damage done to justice and the environment through sworn but irresponsible officials, which aggrieves me. The Compact enables persons "aggrieved" by the actions or inactions of TRPA to file federal claims for relief, appropriately including civil liability damages from the person involved in committing the illegal acts, TRPA in this case. The Compact is the sole governing law, with no liability shield for the Agency from the decisions by its officials, officers and staff.

However, I am not seeking to enrich myself at the public's expense, even to drive a message for environmental protection and regulatory adherence home to TRPA. I seek to reverse the damage done, and further prevent the sort of damage to the environment occurring by arbitrary and capricious applications of the Compact requirements for project approvals, telecom

towers and other projects numbering in the thousands. TRPA has lost its legal way in an ill-conceived attempt to blanket the Lake Tahoe basin in electromagnetic smog from this tower and others like it in the absence of any Tahoe-specific planning for the so-called "wireless rollout," now well into its third commercial decade. This is extensively detailed in the TAC. TRPA's 2018 Tahoe Regional Plan, touted by it as "a Plan for the 21st century," does not contain the word "wireless," or any planning in that regard, and is deficient: an Environmental Impact Report is clearly required under the Compact for the ongoing wireless rollout by the combined forces of the telecom industry at Lake Tahoe, and has been avoided by TRPA against all science and policy. Microplastic pollution, from macrotowers and others sources approved by TRPA, has no control plan. TRPA is failing to implement its basic, long-standing ground water protection requirements and coverage requirements.

I therefore request that this Court establish a fund based on the penalties for which TRPA is liable, under the auspices of the Court, for allowing the present macrotower Project and future Compact cases. The Court is asked to appoint a special master with subject matter and legal expertise, such as a former environmental law judge, to work with the U.S. Environmental Protection Agency and environmental protection agencies for California and Nevada as an advocate for the Lake Tahoe environment, to take all necessary measures for research and mitigation of damage to Lake Tahoe water quality as originally mandated by Congress in approving the Compact. This person would be paid from the fund established to assist to ensure faithful and proper Compact law implementation at TRPA, in the manner specified by the Court. The desired outcome is improving TRPA's compliance with the laws and regulations it is charged to implement until such time that the imposed civil liability is exhausted.