1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11     ALAN MILLER,                                 No.  2:22-cv-02113 KJM AC PS

12                    Plaintiff,

13          v.                                       ORDER and

14     TAHOE REGIONAL PLANNING                       FINDINGS AND RECOMMENDATIONS
       AGENCY,

15
                      Defendant.
16

17

18          Plaintiff is proceeding in this action pro se and the case was accordingly referred to the

19     undersigned by Local Rule 302(c)(21).  This case is brought pursuant to  the Tahoe Regional

20     Planning Compact, P.L. 96-551, 94 Stat. 3233 ("Compact") and, as an action for review on the

21     administrative record, is governed by Federal Rule of Civil Procedure 65 and Local Rule 261.

22     The parties filed the required cross-motions for summary judgment.  ECF No. 28 (plaintiff's

23     motion); ECF No. 35 (defendant's motion).  For the reasons set forth below, the undersigned

24     recommends that plaintiff's motion be DENIED, defendant's motion be GRANTED, that

25     judgment be entered for defendant and the case be closed.

26          Plaintiff also moves to supplement the administrative record.  ECF No. 29.  Defendant

27     opposed that motion, ECF No. 31, and plaintiff replied.  ECF No. 32.  For the reasons set forth

28     below, the motion to supplement the record is DENIED.  Finally, plaintiff moves to exceed page

                                                    1

limits in his reply brief.  ECF No. 37.  That motion is GRANTED and all of plaintiff's briefing

has been fully considered.

# I.    Complaint

Plaintiff challenges a discrete action of defendant Tahoe Regional Planning Agency

("TRPA")'s Governing Board to deny plaintiff's administrative appeal of the Executive

Director's approval of a plan revision ("the Plan Revision") for a cell tower project (the

"Project").  Per plaintiff's description, the Project involved TRPA granting an exception to its

own regulations that prevent excavation exceeding five feet, to prevent interference with a below-

ground water table.  ECF No. 28 at 1.  Plaintiff does not allege that he challenged the Project

approval itself; he asserts only that he appealed the approval of the Revision, which approved

deepened excavation from 7.5 to 13.5 feet and doubled the amount of material removed for the

tower from 25 to 50 cubic yards.  He alleges that his appeal was arbitrarily and capriciously

denied by the TRPA Governing Board.  Id.

The TRPA contends that substantial evidence in the administrative record demonstrates

that, due to the soil profile at the Project site, groundwater was neither anticipated nor

encountered during the excavation.  ECF No. 35 at 2.  It further contends that because plaintiff

does not identify any prejudicial abuse of discretion by TRPA, his summary judgment motion

should be denied and TRPA's cross-motion for summary judgment should be granted.  Plaintiff

makes twelve separate claims of violative conduct, though the ultimate question before the court

is whether the Governing Board's denial of plaintiff's appeal was supported by substantial

evidence and therefore not a "prejudicial abuse of discretion" within the meaning of Article

VI(j)(5) of the Tahoe Regional Planning Compact ("the Compact").

# II.    Legal Background

In 1968, California and Nevada entered the Tahoe Regional Planning Compact, which

was approved by Congress in 1969.  League to Save Lake Tahoe v. Tahoe Reg'l Planning

Agency, 739 F.Supp.2d 1260, 1265 (E.D. Cal. 2010) (Karlton, J.), aff'd in part, vacated in part,

remanded, 469 Fed.Appx. 621 (9th Cir. 2012).  The Compact was amended and ratified by

Congress in 1980.  Public Law 96-551, 94 Stat. 3233 (1980).  Congress approved an additional

amendment in 2016.  Public Law 114-322, 130 Stat. 1628, sec. 3603 (2016).[1]  The Compact requires TRPA to establish environmental threshold carrying capacities and to adopt and enforce a Regional Plan to achieve and maintain those thresholds.  Compact at Art. I(b).  An "environmental threshold carrying capacity" is "an environmental standard necessary to maintain a significant scenic, recreational, educational, scientific or natural value of the region or to maintain public health and safety within the region."  Compact at Art. II(i).  TRPA must regulate the region to achieve these thresholds "while providing opportunities for orderly growth and development consistent with such capacities."  Compact at Art. I(b).

The Compact also directs the agency to adopt and administer ordinances, rules, and regulations.  Art. I(b).  In compliance with that instruction, TRPA has adopted a Code of Ordinances ("Code")[2] to implement the Regional Plan's Goals and Policies, and Rules of Procedure ("ROP"), which set standards for how the agency operates and how certain processes are carried out.  TRPA amends the Code and ROP from time to time.  Id.  The Compact provides that TRPA "shall interpret and administer its plans, ordinances, rules and regulations in accordance with the provision of this compact."  Art. I(c).  Like the Compact, TRPA's duly adopted ordinances, rules, and regulations themselves have the legal status of federal law.  Lake Tahoe Watercraft Recreation Ass'n v. Tahoe Reg'l Plan. Agency, 24 F. Supp. 2d 1062, 1068-69 (E.D. Cal. 1998)

Any development project approved by TRPA must comply with the Regional Plan and applicable ordinances, rules and regulations established by the agency.  Compact at Art. III(g)(2).  Under TRPA's Code of Ordinances, all new construction in the Lake Tahoe basin that "may have a substantial effect on the land, air, water space, or any other natural resources in the Tahoe region" must undergo review and approval by TRPA.  Code at §2.1.2.  The Executive Director has authority to modify project approvals.  See ROP 5.15; AR 1586-1587.  Under Code §2.1.2, all activities in the Lake Tahoe basin that "may have a substantial effect on the land, air, water space,

---

[1]  For ease of reference, the Compact as amended can be located at https://www.trpa.gov/wp-content/uploads/documents/archive/1/Bistate_Compact.pdf.
[2]  Code: https://www.trpa.gov/wp-content/uploads/TRPA-Code-of-Ordinances.pdf.
ROP: https://www.trpa.gov/wp-content/uploads/documents/Rules-of-Procedure.pdf.

or any other natural resources in the Tahoe region" are "projects subject to TRPA review and approval."  Any development project approved by TRPA must comply with the Regional Plan and applicable ordinances, rules and regulations established by the agency.  Compact at Art. VI(b).  Project applications are reviewed by TRPA staff, with some permits being issued by the Executive Director, some applications considered by a Hearings Officer, and some heard by the Governing Board, depending on the type of project at issue.  See Code §2.2.2.

The governing body of TRPA is its Governing Board, which consists of 15 members—seven from California, seven from Nevada and one non-voting Presidential Appointee.  Compact at Art. III.  The Governing Board adopts all ordinances, rules, and regulations that are necessary to effectuate the adopted regional plan.  Id. at Art. VI(a).  The Board meets once per month at a noticed public meeting.  Id. at Art. III(d).  TRPA has an Executive Director who is appointed by the Governing Board and oversees TRPA staff who, among other skills, have planning expertise. Id. at Art. IV(a).  TRPA's Code creates a means to appeal an Executive Director or Hearings Officer decision to the Governing Board.  Code at §2.2.2(G)(3).  TRPA's Rules set forth procedures for appeal, which include: a deadline to file a notice of appeal (ROP §11.2); the mandatory contents of the statement of appeal (ROP §11.4); the deadline for filing the statement to have the appeal heard on the next Governing Board agenda (ROP §11.4); the requirement that the Executive Director prepare a staff position paper (ROP §11.6.1, referencing ROP §5.11.2); the appeal hearing process (ROP §11.8.2, referencing ROP §5.13); and the scope of the Governing Board's authority to affirm, modify or revoke the Executive Director's action (ROP §11.6.2).

The Governing Board has a five-member Legal Committee that serves in an advisory capacity.  Among other responsibilities, the Legal Committee hears presentations regarding administrative appeals and makes recommendations to the Governing Board.  AR 3398-3429.  "If the Board determines to hear the appeal [of a project approval], it may take action to modify or revoke the approval by the same affirmative vote as would have been required to approve the matter before the Board. Failure to take such action shall be deemed a denial of the appeal." ROP §11.6.2.

4

1

### III.   Legal Standard

2       The final action of the Governing Board is subject to judicial review, and the Compact

3  contains provisions specifying who may obtain judicial review of agency decisions, which

4  decisions are reviewable, and the standard by which a court conducts that review.  Compact at

5  Art. VI(j).

6           Legal actions arising out of or alleging a violation of the provisions
            of this compact, of the regional plan or of an ordinance or regulation
7           of the agency or of a permit or a condition of a permit issued by the
            agency are governed by the following provisions:
8
            This subdivision applies to:
9
               (A) Actions arising out of activities directly undertaken by
10             the agency.

11             (B) Actions arising out of the issuance to a person of a lease,
               permit, license or other entitlement for use by the agency.
12
               (C) Actions arising out of any other act or failure to act by
13             any person or public agency.

14  Id.

15       The Compact makes judicial review available to an "aggrieved person," which it defines

16  as "any person who has appeared, either in person, through an authorized representative, or in

17  writing, before the agency at an appropriate administrative hearing to register objection to the

18  action which is being challenged, or who had good cause for not making such an appearance."

19  Compact at Art. VI(j)(3).  The Compact also sets specific deadlines for filing a judicial review

20  action:

21           [Actions] arising out of the adoption or amendment of the regional
            plan or of any ordinance or regulation of the agency, or out of the
22          granting or denial of any permit, shall be commenced within 60 days
            after final action by the agency. All other legal actions shall be
23          commenced within 65 days after discovery of the cause of action.

24  Art. VI(j)(4).

25       The Compact specifies the standard of review.  For a legal challenge to an

26  "adjudicatory act or decision of the agency to approve or disapprove a project," the Court's

27  standard of review is for a "prejudicial abuse of discretion," which means "the agency has not

28  proceeded in a manner required by law or if the act or decision of the agency was not supported

5

by substantial evidence in light of the whole record." Art. VI(j)(5).  The reviewing court may

not "exercise its independent judgment on evidence."  Id.  That adjudication uses the vehicle of

summary judgment does not alter this standard:

> [W]hen a party seeks review of agency action … [before a district
> court], the district judge sits as an appellate tribunal… [t]he entire
> case on review is a question of law, and the complaint, properly read
> actually presents no factual allegations, but rather only arguments
> about the legal conclusion to be drawn about the agency action…
> Thus, "[this Court's] review ... is based on the agency record and
> limited to determining whether the agency acted arbitrarily or
> capriciously.

Herguan Univ. v. Immigration & Customs Enf't, 258 F. Supp. 3d 1050, 1063 (N.D. Cal. 2017)

(internal quotations and citations omitted) (interlineations in the original).

The Court must look at "the judicially noticed record" to determine whether TRPA's

procedures provided "substantial evidence" of compliance with the Compact language.  Comm.

For Reasonable Regulation Of Lake Tahoe v. Tahoe Reg'l Planning Agency, 365 F.Supp.2d

1146, 1159 (D. Nev. 2005).  "Substantial evidence means 'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'"  Burch v. Barnhart, 400

F.3d 676, 679 (9th Cir. 2005) (quoting Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir.

1989)).  "Substantial evidence supports the [agency's] findings when 'they logically arise from

the facts.  They need not be the only result which could so arise.'"  Olsen v. Nat'l Transp. Safety

Bd., 14 F.3d 471, 474 (9th Cir. 1994) (quoting Meik v. NTSB, 710 F.2d 584, 586 (9th Cir.

1983)).  Even if a challenger presents "rival" evidence, a reviewing court "must not second-guess

the particular way the agency chooses to weigh the conflicting evidence or resolve the

dispute."  ASARCO, Inc. v. Occupational Safety & Health Admin., 746 F.2d 483, 490 (9th Cir.

1984) (quoting United Steelworkers of America v. Marshall, 647 F.2d 1189, 1263 (D.C.Cir.

1980)).

## IV.   Administrative History

Unless otherwise specified, the following facts are either expressly undisputed by the

parties or have been determined by the court, upon a full review of the record, to be undisputed

by competent evidence.

6

1        1.   The Initiation of the Cell Tower Project

2        In March of 2019, non-party Sacramento Valley Limited Partnership, doing business as

3   Verizon Wireless ("Verizon"), applied to TRPA for a permit to erect a cell tower at 1360 Ski Run

4   Blvd. in South Lake Tahoe ("the Project").  On August 27, 2019, TRPA issued its Soil

5   Hydrologic Approval Waiver, which provided:

> The Tahoe Regional Planning Agency (TRPA) staff has reviewed the
> Soils/Hydrologic Scoping Report Application submitted in
> association with a monopine cell tower and equipment shelter. The
> proposed excavation is 7 feet 6 inches below ground surface. It is not
> expected that groundwater will be encountered in this location and
> the excavation is allowed pursuant to TRPA Code of Ordinances
> Sections 33.3.6.A.2.a (accommodation of engineering requirements
> for above-ground structures) and 33.3.6.A.2.d (public health and
> safety).  Please note that it is possible that variations in the soil or
> groundwater conditions could exist that are different than what has
> been investigated or reported.  If conditions are found to be wetter
> than expected, contact TRPA immediately to discuss options for
> dewatering.

13  AR 0047.  Verizon's geotechnical engineer did a soil boring to 19 feet below ground surface,

14  with no groundwater encountered.  AR 0030.

15       TRPA's Hearings Officer approved the application on October 14, 2021, and TRPA

16  issued the permit.  AR 1586.  The approved Project allowed for an excavation depth of 7.6 feet

17  below ground surface. AR 0019.  However, in the permit, TRPA foresaw the potential need to

18  alter the depth of excavation when design and engineering plans were finalized by including the

19  following Special Condition 3.F:

> Please provide final engineering drawings, including a detailed
> foundation design. TRPA has approved an excavation depth of 7 feet
> 6 inches below ground surface (bgs). If the final design includes an
> excavation depth deeper than that, the applicant shall submit a new
> soils-hydro application to TRPA, seeking approval for the proposed
> excavation depth. TRPA shall approve the excavation prior to
> stamping the final plans.

24  AR 1585.  Plaintiff did not file an administrative appeal of the Project approval (AR 1586), and

25  the time to do so has long-since passed.  See Compact at Art. VI(j)(4).

26       2.   The Plan Revision

27       On January 3, 2022, Verizon sought a Plan Revision to allow for an excavation depth of

28  13.5 feet below ground surface.  AR 0055-0056.  Verizon submitted revised plans, an updated

structural analysis and geotechnical investigation report, and the application for the plan revision. AR 0064-0227, 0237-0241.  On August 5, 2022, TRPA issued a Revised: Soil Hydrologic Approval Waiver, which except for the authorization for a deeper excavation, contained the same language as the original Soil Hydrologic Approval Waiver:

> The Tahoe Regional Planning Agency (TRPA) staff has reviewed the Soils/Hydrologic Scoping Report Application submitted in association with a monopine cell tower and equipment shelter. The proposed excavation is 13.5 feet below ground surface. It is not expected that groundwater will be encountered in this location and the excavation is allowed pursuant to TRPA Code of Ordinances Sections 33.3.6.A.2.a (accommodation of engineering requirements for aboveground structures) and 33.3.6.A.2.d (public health and safety).  Please note that it is possible that variations in the soil or groundwater conditions could exist that are different than what has been investigated or reported.  If conditions are found to be wetter than expected, contact TRPA immediately to discuss options for dewatering.

AR 0269; compare AR 0019.  TRPA issued the revised permit with the greater excavation depth on August 17, 2022.  AR 0666-0678.  Excavation work occurred in late August and early September 2022.  AR 1586.

### 3.  Plaintiff's Appeal Of The Revision To The Governing Board And Request For Stay

On August 22, 2022, plaintiff appealed the Plan Revision to the Governing Board and requested a stay.  AR 0731-0755.  Verizon filed a response.  AR 0886-0959.  Pursuant to TRPA ROP §11.3, the Governing Board Chair reviewed the material submitted by the parties, consulted with TRPA staff, and issued a limited stay of the pouring of concrete for the tower foundation until the TRPA Governing Board could hear plaintiff's appeal at its September 28, 2022 hearing. AR 1182.  The partial stay also indicated that TRPA would monitor the excavation using a qualified soils consultant, and although not anticipated, should groundwater be intercepted during the excavation, required that Verizon cease the excavation immediately and consult with TRPA. Id.

### 4.  Observations Of The Excavation By A Certified Professional Soil Scientist

During the excavation, TRPA contracted with a Certified Professional Soil Scientist to observe the soil conditions and look for signs of groundwater.  AR 1269-1271, 1362.  The soil scientist made two observations: the first at approximately the depth initially approved for the

Project, and the second upon completion of the 13.5-foot excavation approved in the Plan Revision.  AR 1269-1271, 1362.  As indicated in the Soil Hydrological Investigation summary of findings, no groundwater was observed after partial excavation was completed.  AR 1269.  Additionally, based on the granitic bedrock encountered during the excavation, the soil scientist did not anticipate that the groundwater table would be encountered within the requested excavation depth of 13.5 feet.  AR 1269.  After the excavation to 13.5 feet was completed, during the soil scientist's second observation, "there were no indicators of groundwater."  AR 1362.

### 5.  The Governing Board's Denial Of Plaintiff's Appeal

Plaintiff filed his Statement of Appeal.  AR 1283-1360.  Verizon filed a response.  AR 1520-1577.  The Governing Board's Legal Committee heard plaintiff's appeal on September 28, 2022.  AR 3357 (audio file).  The Staff Report recommended denial of the appeal, citing the soils and hydrology report that showed no groundwater to at least 19 feet below ground surface, a point that plaintiff never challenged.  AR1584-1589.  After presentations by staff, plaintiff, and Verizon, the Legal Committee unanimously recommended that the appeal be denied.  AR 3331-3357, 3398-3410.  The Governing Board heard the appeal the same day and, after presentations by staff, plaintiff, and Verizon, followed staff's recommendation and voted to deny plaintiff's appeal.  AR 3358-3397, 3422-3429.  This lawsuit followed.

### 6.  Lawsuit Procedural Background

Plaintiff initiated the instant action on November 23, 2022.  ECF 1.  He filed a first amended complaint on January 25, 2023.  ECF No. 7.  TRPA answered on March 28, 2023 (ECF Nos. 17, 18) and lodged the administrative record on May 11, 2023.  ECF 22, 23.  The undersigned held a status conference on June 7, 2023 (ECF No. 26) and gave plaintiff leave to file a motion to supplement the record either prior to, or concurrently with, his motion for summary judgment pursuant to Local Rule 261.  ECF No. 27.  On July 24, 2023, plaintiff filed his motion for summary judgment (ECF No. 28) and a motion to supplement the record (ECF 29).  On August 2, 2023, TRPA opposed the motion to supplement the record.  ECF 31.  On August 29, 2023, the parties filed a stipulation and proposed order to extend summary judgment deadlines, which the Court granted on August 30, 2023.  ECF 33, 34.  TRPA opposed the summary

1  judgment motion and filed its cross-motion for summary judgment pursuant to Local Rule 261 on
2  September 20, 2023.  ECF No. 36

3  **V.      Motion to Supplement the Record**

4        As a preliminary matter, the undersigned must address plaintiff's motion to supplement
5  the administrative record, as it goes to the adequacy of the record supporting the decision on
6  summary judgment.  Because plaintiff challenges an administrative agency action, this case
7  qualifies as an action for review on an Administrative Record in a non-social security case, and is
8  therefore governed by Local Rule 261.  The Administrative Record was filed on May 11, 2023.
9  ECF No. 22.  Plaintiff, by his motion, seeks leave of court to supplement the Administrative
10  Record to include (1) a Freedom of Information Act (FOIA) request letter from plaintiff
11  concerning the lack of oaths taken by TRPA Board members; (2) TRPA's FOIA response letter to
12  plaintiff regarding his oath of office question; (3) TRPA's FOIA response letter to plaintiff
13  regarding questions about electronic device record storage; (4) TRPA's FOIA response letter to
14  plaintiff notifying plaintiff it was processing his request for public records; and (5) plaintiffs
15  preliminary thoughts on settlement.  ECF No. 29, Exhibits 1-5.

16        Under the Administrative Procedures Act, "[a] person suffering legal wrong because of
17  agency action, or adversely affected or aggrieved by agency action within the meaning of a
18  relevant statute, is entitled to judicial review thereof."  See 5 U.S.C. § 702.  When considering an
19  APA case, the district court "review[s] the whole record or those parts of it cited by a party."  See
20  5 U.S.C. § 706.  Review is presumptively limited to "the administrative record already in
21  existence."  See Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743–43 (1985) (internal
22  quotation and citation omitted).  When an agency compiles and submits the administrative record,
23  that record is entitled to a presumption of regularity.  Goffney v. Becerra,  995 F.3d 737, 748 (9th
24  Cir. 2021); Pinnacle Armor, Inc. v. United States, 923 F.Supp.2d 1226, 1232 (E.D. Cal. 2013).
25  The court presumes the agency properly defined and compiled the administrative record absent
26  "concrete evidence" that the agency omitted documents or materials that it considered when
27  making its decision.  Pinnacle Armor, 923 F.Supp.2d at 1239 (quoting Sara Lee Corp. v. Am.
28  Bakers Ass'n, 252 F.R.D. 31, 34 (D.D.C.2008)).

10

1    The Ninth Circuit has recognized narrow exceptions to the general rule limiting reviewing

2    courts to the administrative record in all APA cases, including "(1) if admission is necessary to

3    determine whether the agency has considered all relevant factors and has explained its decision,

4    (2) if the agency has relied on documents not in the record, (3) when supplementing the record is

5    necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a

6    showing of agency bad faith." Lands Council v. Powell, 395 F.3d 1019, 1030 (9th Cir. 2005)

7    (internal quotations omitted).

8    Plaintiff asserts that extra-record discovery is necessary because the issue regarding oaths

9    of office renders all official acts of the TRPA null and void.  ECF No. 29 at 2.  Plaintiff also

10   makes allegations regarding TRPA's bad-faith record publication policies and subterfuge

11   regarding electronic records.  Id. at 9-10.  The gravamen of plaintiff's motion is an argument that

12   the agency acted in bad faith.  He concludes by arguing that the suggested supplements to the

13   record make it "clear that the TRPA is a highly corrupt and incompetent agency that set out to

14   deliberately deprive me and the public of the right to an unbiased tribunal, the right to see

15   evidence and public comments, particularly in opposition to me, and the right to have

16   adjudication based on a public record that is visible, accurate and complete." Id. at 18.  TRPA

17   opposes the motion to supplement the record, arguing that the documents submitted by plaintiff

18   are outside the scope of the court's review in this case and that plaintiff has not identified any

19   bad-faith agency action to warrant record supplementation.  ECF No. 31 at 4-9.  The undersigned

20   agrees with defendant that the record does not require supplementation in this case.

21   A.  Oath of Office Concern Does Not Demonstrate Bad Faith

22   Plaintiff's assertion that TRPA's Board members have not taken an oath of office does not

23   justify supplementing the administrative record.  As explained in TRPA's response to plaintiff's

24   FOIA request, because TRPA's Governing Board members are officials for the governmental

25   entities that appointed them, and serve at the pleasure of those entities, no independent oath of

26   office to serve on the TRPA is required.  ECF 29 at Ex. 2; see also Compact Art. III(a)

27   (explaining the required Governing Board member appointments from each state).  Governing

28   Board members sometimes provide copies of the oath they took for their respective agencies to

1   TRPA, and TRPA provided copies of those documents to plaintiff.  See ECF 29, Ex. 2.  The

2   Compact does not require Governing Board members to take oaths of office.  See, Compact at

3   Art. III.  Nothing in the documents provided by plaintiff indicates that TRPA acted

4   inappropriately or with bad faith, and there is no reason to supplement the record with these

5   documents.

6          B.  The Administrative Record Already Contains Public Comments

7          Plaintiff alleges that that TRPA demonstrated bad faith by failing to publish on its website

8   the public comments regarding his appeal located at AR 2113-3330, so that the public could see

9   them prior to his appeal hearing.  ECF No. 29 at 6.  As plaintiff acknowledges, because these

10  documents are already in the administrative record, there is nothing to supplement.  Because the

11  administrative record contains the public comments at issue, plaintiff fails to identify a deficiency

12  in the record.

13         C.  There is No Concrete Evidence of the Existence of Additional Relevant Documents

14         Plaintiff asserts his suspicion that TRPA Board members received calls, messages, or

15  emails regarding his appeal on their personal electronic devices, which TRPA did not search and

16  include in the certified Administrative Record.  ECF No. 29 at 7, 10-12.  Plaintiff's assertions are

17  unsupported by evidence and are insufficient to overcome the presumption that the record is

18  complete.  TRPA's lodging of the Administrative Record is supported by the Declaration of

19  Katherine Huston Authenticating and Certifying the Administrative Record.  ECF No. 23 at 16.

20  Plaintiff has not identified any specific document that he knows of or reasonably understands to

21  exist which is not included in the record; hunches and suspicions are not enough.

22         Good cause appearing, IT IS HEREBY ORDERED that supplemental discovery and

23  supplementation of the record are not necessary.  Plaintiff's motion (ECF No. 29) is DENIED and

24  the case proceeds to the merits on the administrative record as filed by defendant.

25                            **VI.    Summary Judgment Analysis**

26         Plaintiff presents twelve claims which he contends demonstrate the invalidity of the

27  TRPA's action regarding the construction of the Verizon cell tower.  ECF No. 28.  Each claim is

28  addressed independently below, listed as titled by plaintiff in his motion.

A.  Claim 1: "August 5, 2022 Exception Letter"

Plaintiff alleges that the TRPA violated a Code requirement at §33.3.6.A.2, which states that "TRPA may approve exceptions to the prohibition of groundwater interception or interference if TRPA finds that: a. Excavation is required by the International Building Code (IBC) or local building code for minimum depth below natural ground for above ground structure . . it is necessary for the public safety and health…"  by approving an exception "without substantial fact-finding therein that the deepened excavation would not interfere with groundwater."  ECF No. 28 at 1.  Plaintiff asserts the TRPA's exception decision is arbitrary and capricious because it merely cites applicable code sections, states the project meets code requirement, and makes only one material finding regarding ground water that was based on a cursory investigation carried out by the permittee's contractor in 2019.  ECF No. 28 at 7, citing AR 00046.  Plaintiff states that his own engineering assessment and findings presented in his affidavit demonstrate that the decision was arbitrary and capricious, pointing the court to the administrative record.  ECF No. 28 at 7, citing AR 0738-0473, 0753-0755, 0168.

Defendant refutes plaintiff's claim, first by asserting that plaintiff mischaracterized TRPA's action by stating that it approved an "exception to … [the] prohibition" of groundwater interception or interference contained in Code §33.3.6.A.2, ECF No. 28 at 6-7, because TRPA's actual finding when approving the Plan Revision that no interception or interference was likely. AR 0269.  TRPA argues it reasonably reached this conclusion based on the 19-foot soil boring taken by Verizon's geotechnical engineer in which no groundwater was encountered, the soil profile, and the reports and plans submitted by Verizon.  AR 0030, 1584-1585.  TRPA also explains that it took two steps to address the situation in the unlikely event groundwater was encountered.  First, it retained a Certified Professional Soil Scientist to observe a two-step excavation (i.e., the first observation when the excavation reached approximately the 7.6-foot depth approved in the Project permit and the second observation when the excavation reached the 13.5-foot depth approved in the Plan Revision).  AR 1269-1271, AR 1362.  The soil scientist confirmed that TRPA's finding was correct and that no groundwater was encountered at either step. Id.  Second, TRPA required that Verizon immediately cease excavation should groundwater

13

be observed.  AR 1182.  Because TRPA's technical conclusion was that groundwater would not be encountered, and in any event, it required excavation to halt should Verizon have encountered groundwater, none of the Code exceptions were needed.  See Code §33.3.6.A.2.  TRPA continues to argue that even if the exceptions were implicated, TRPA correctly identified two that would apply: accommodation of engineering requirements for above-ground structures (Code §33.3.6.A.2.a) and public health and safety because the cell tower will close a necessary gap in coverage for first responders (Code §33.3.6.A.2.d). AR 0269, 1589, 1899-1909, 1980-1988.

The undersigned agrees with TRPA that the Executive Director's findings are well supported by substantial evidence, and when denying plaintiff's appeal, the staff report and presentation to the Governing Board pointed to this record evidence.  AR 1587-1589, 3419. Plaintiff's contention that he presented countervailing evidence (ECF No. 28 at 3-4, 7) does not undermine the fact that substantial evidence to support TRPA's decision.  A decision meets the substantial evidence standard so long as a reasonable mind might accept that the evidence supports the conclusion, even if there might also be evidence to support a different conclusion. Olsen, 14 F.3d at 474.  The Compact is clear that the court cannot reweigh or make an independent judgment on the evidence; "the scope of judicial inquiry shall extend only to whether there was prejudicial abuse of discretion."  Compact at Art. VI(j)(5).  The claim as presented does not demonstrate that TRPA's decision was unsupported; instead, the record demonstrates that TRPA's decision was based on ample evidence in the record.  TRPA is entitled to summary judgment on this claim.

B.  Claim 2: "Late Response for Stay Request"

Plaintiff asserts that the TRPA violated TRPA's ROP §11.3, which requires the Governing Board Chair to "review any request for a stay of a project or matter and the evidence submitted therewith, and  . . . within two working days of the request, [decide] whether or not a stay shall be issued," when it received his stay request on August 22, 2022 and responded on August 24, 2022 that a partial stay was granted.  ECF No. 39 at 8-9.  Plaintiff asserts the late response was in bad faith and deprived him his due process rights and placing him "in extreme and unanticipated hardship to prepare [a] Statement of Appeal" for the hearing, which was

"illegally scheduled by the Chair" on September 29, 2022. Id. at 8.

First, the court agrees with defendant's assertion that this claim is moot because there is no available remedy with respect to TRPA's delayed response. Though TRPA responded a day late, it did issue a partial stay and timely scheduled a hearing; there is no further relief for the court to order related to the one-day delay in response time. "If there is no longer a possibility that an appellant can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction." Ruvalcaba v. City of L.A., 167 F.3d 514, 521 (9th Cir. 1999). Though plaintiff makes the conclusory statement that the delay resulted a due process violation, he does not explain what constitutionally protected interest was at stake or how he suffered any actual harm. A plaintiff who seeks to invoke the protections of the Fourteenth Amendment "must establish" that a constitutionally significant interest in life, liberty, or property "is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). "The deprivation of a procedural right to be heard . . . is not actionable when there is no protected right at stake." Shanks v. Dressel, 540 F.3d 1082, 1092 (9th Cir. 2008). Plaintiff does not identify, and the court is not aware of any constitutionally protected interest created by TRPA's ROPs, and thus, plaintiff does not establish a constitutional violation. Further, in this case, plaintiff's appeal *was* heard and acted upon, albeit one day late, and the undersigned finds that TRPA substantially complied with the ROPs. TRPA is entitled to summary judgment on this claim.

C. Claim 3: "Advancement of Appeal Hearing Date"

Plaintiff contends that TRPA violated his due process rights and ROP §§ 11.2 and 11.4, by setting his appeal hearing too soon. ECF No. 28 at 8-9. As explained above, there is no constitutional right arising from TRPA's Rules. Further, ROP §§11.2 and 11.4 do not limit TRPA's ability to set a hearing date, but rather impose certain deadlines on the appellant to get the appeal hearing scheduled. Indeed, ROP §11.3 anticipates that an appeal hearing will be scheduled for the next Governing Board meeting when a stay is requested: "The appellant may request, as part of the written statement of appeal, a stay of the project or matter, and any such request shall be by affidavit or under penalty of perjury and shall include credible evidence of the need for a stay pending a hearing on the appeal before the Board at its next regular meeting."

15

1  Plaintiff's contention that TRPA "advanced" the appeal hearing to "assist Verizon to complete the

2  foundation" before the end of grading season in October is unsupported.  ECF No. 28 at 9.  TRPA

3  is entitled to summary judgment on this claim.

4      D.  Claim 4: "Requirements for a Complete Project Application"

5          Plaintiff alleges that the TRPA approved the plan revision even though the application

6  was missing many required elements and was therefore incomplete.  ECF No. 28 at 9.  TRPA

7  explains that it treated Verizon's Plan Revision as minor and not requiring the submission of an

8  entirely new project application that meets all application requirements of ROP §5.2.  ECF No. 35

9  at 15.  TRPA explains that it did so because it had already considered the entire project

10  application when approving the Project, which occurred just a few months before Verizon

11  submitted the Plan Revision request.  AR 1586-1587, 3413.  For that reason, when considering

12  the Plan Revision application, TRPA asked only for the additional information it needed to

13  evaluate the specific proposed change.  AR 0059, 0066-0233, 0888, 1586-1587, 3413.  The court

14  agrees with TRPA that substantial evidence in the record supports this discretionary decision (see

15  id.), and plaintiff has failed to identify any prejudicial abuse of discretion in TRPA's

16  determination that a duplicative submission was not warranted.

17          Further, this claim is outside the scope of the court's review.  ROP §5.2 does not create a

18  third-party cause of action to challenge the completeness of an application because the question

19  on judicial review is whether substantial evidence supported the Governing Board's rejection of

20  plaintiff's appeal of the Plan Revision, not the adequacy of the application itself.  See Compact

21  Art. VI(j)(5).  TRPA is entitled to summary judgment on this claim.

22      E.  Claim 5: "Application Signer in Perjury"

23          Plaintiff alleges that there is no signature on the application as required by the ROPs, and

24  even if there were a signature, it was perjured because the application was incomplete, and the

25  applicant could not truthfully state that the application was complete to the best of their

26  knowledge.  ECF No. 28 at 10.  As discussed above, the application was not incomplete, and a

27  challenge to the adequacy of the initial application is outside the proper scope of the court's

28  review.  Regardless, the record is clear that Verizon's authorized representative, Michelle

1  Fernandes, digitally signed the Plan Revision application with a dated timestamp.  AR 0238.

2  Plaintiff does not present any evidence that this signature was perjured or issued in bad faith.

3  TRPA is entitled to summary judgment on this claim.

4      F.  Claim 6: "Incomplete Application: Missing Initial Environmental Checklist"

5          Plaintiff's sixth claim for relief, like Claim 4, challenges the completeness of the

6  application, this time addressing the absence of an initial environmental checklist.  ECF No. 28 at

7  10.  As with Claim 4, summary judgment in TRPA's favor is required because TRPA's Rules do

8  not create a private right of action to challenge the contents of an application, and substantial

9  evidence supported the Plan Revision no matter whether another Initial Environmental Checklist

10  ("IEC") was submitted. See supra §III.C.4 and 5.

11          TRPA's Rules require supplemental environmental review for a project revision only if

12  that revision involves new significant environmental effects not otherwise considered.  See, e.g.,

13  ROP §6.15.1 (Grounds for Supplemental EIS); see also AR 1587-1588, 3413.  The record reflects

14  that TRPA staff found that no interception or interference with groundwater would occur due to

15  the 6-foot increase in excavation depth.  AR 3412-3413.  Therefore, no significant adverse

16  environmental impacts from the Plan Revision were anticipated to occur that might require a

17  supplemental IEC.  AR 1587, 3413.  Plaintiff does not identify any prejudicial abuse of discretion

18  arising from TRPA's determination that a second IEC was unnecessary.  Finally, the court finds

19  TRPA's determination was consistent with other environmental review cases, which hold that a

20  new environmental document is not required for project modifications that amount to minor

21  variations on the alternatives discussed in the original EIS, or that are qualitatively within the

22  spectrum of alternatives discussed within the original EIS.  See Great Old Broads for Wilderness

23  v. Kimbell, 709 F.3d 836, 854 (9th Cir. 2013); City of Las Vegas, Nev. v. Fed. Aviation Admin.,

24  570 F.3d 1109, 1117 (9th Cir. 2009); Klamath Siskiyou Wildlands Ctr. v. U.S. Forest Serv., 52 F.

25  Supp. 3d 1089, 1098–99 (E.D. Cal. 2014).  TRPA is entitled to summary judgment on this claim.

26      G.  Claim 7: "No Environmental Review Determination"

27          This claim is substantially similar to Claim 6, except that it addresses the lack of an

28  Environmental Review determination in the project revision.  ECF No. 28 at 11.  The claim fails

1  for the same reasons outlined above.  The TRPA is entitled to summary judgment on this claim.

2          H.  Claim 8: "Incomplete Application: Missing Necessary Reports"

3          In this claim, plaintiff again takes issue with the completeness of the application, but

4  specifically addresses the fact that the TRPA treated the proposed revision as minor such that

5  prior project reports could be used.  ECF No. 28 at 12.  Plaintiff argues that TRPA abused its

6  discretion in accepting the 2019 revised geotechnical report that had been previously submitted,

7  arguing that the report fails the standard outlined in Daubert v. Merrell Dow Pharmaceuticals Inc.,

8  509 U.S. 579 (1993).  Id.  The Daubert standard has to do with the adequacy of proffered

9  scientific evidence for presentation to a jury, and is irrelevant here.  This is a judicial review of an

10  agency decision, the substantial evidence standard applies, and nothing in this claim demonstrates

11  that there was a lack of substantial evidence supporting the agency decision.  See Compact at Art.

12  VI(j)(5).  TRPA is entitled to summary judgment on this claim.

13          I.  Claim 9: "Prohibition of Excavation Interference with Ground Water Table"

14          Plaintiff's ninth claim for relief is duplicative of Claim 1.  ECF No. 28 at 14.  Because

15  substantial evidence supported TRPA's conclusion that there would be no interception of

16  groundwater with the revised excavation depth, and TRPA properly exercised its discretion to

17  employ protections to confirm this conclusion, Claim 9 fails as a matter of law.  TRPA is entitled

18  to summary judgment on this claim for the same reasons as those discussed above in relation to

19  Claim 1.

20          J.  Claim 10: "Conflict of Interest Violations"

21          Plaintiff asserts that TRPA's retention of a consulting Certified Professional Soil Scientist

22  to observe the excavation constituted a conflict of interest per ROP §8.4, which provides that

23  "[e]mployees shall not accept secondary employment, nor accept present compensation or

24  arrange for future compensation for services already performed or to be performed, that give rise

25  to an actual conflict of interest or that create an appearance of a conflict of interest."  ECF No. 29

26  at 14.  As defendant explains, this provision is designed to prevent employees from seeking

27  supplemental employment or compensation that creates a conflict of interest with their TRPA

28  duties.  Here, to provide additional oversight and ensure no interference with or interception of

18

1    groundwater, TRPA retained a third-party soils consultant (not, as plaintiff asserts, a "subordinate

2    employee") to observe the excavation.  AR 1269-1271, 1362.  The consultant provided reports

3    that confirmed no groundwater was encountered.  AR 1269, 1362.  Plaintiff does not identify any

4    employee who accepted compensation within the meaning of ROP §8.4 or who did anything other

5    than perform the employee's job duties.  Thus, TRPA is entitled to summary judgment on this

6    claim.

7         K.  Claim 11: "Impervious Land Converge in Excess of Limitations"

8         Claim 11 posits that TRPA improperly approved revised construction plans beyond

9    allowable land coverage limitations.  ECF No. 28 at 15.  Plaintiff asserts that he did his own

10   coverage computations, but TRPA staff was unable to understand the engineering analysis he

11   presented for the record, resulting in error.  Id. at 15-16.  Plaintiff alleges that the AR

12   demonstrates that TROP provided no valid refutation of his coverage analysis.  Id. at 16.  TRPA

13   counters that it rebutted plaintiff's contentions in the staff report to the Governing Board (AR

14   1972-1979, inclusive of audio file) and at the appeal hearing (AR 3420), noting that in making his

15   calculations, plaintiff appeared to have misread the four separate profile perspectives in the

16   approved plans, resulting in overstatement of the coverage calculation for the cell tower footing.

17   AR 1973.  Staff specifically annotated the plans to confirm for the Governing Board the accuracy

18   of TRPA's coverage calculation.  AR 1974-1979.  Regardless, TRPA is entitled to summary

19   judgment on this claim because the court is required to defer to TRPA's calculations and cannot

20   exercise independent judgment on this evidence.  Compact Art. VI(j)(5).

21        L.  Claim 12: "Illegal Appeal Hearing Voting Procedure"

22        Plaintiff's twelfth claim for relief seems to argue that Governing Board should have

23   required four votes from each state's members to adopt a variance procedure, rather than nine

24   votes total, with five from California, where this project is located.  ECF No. 28 at 16-17.  Even if

25   the court were to accept plaintiff's argument, there would be harmless error at most.  Plaintiff

26   only obtained one vote in his favor for his appeal, with six California Board members and five

27   Nevada Board members voting against his appeal.  AR 3426.  Thus, the alternative voting

28   procedure urged by plaintiff would not have altered the outcome.  Id.  Because it would not

1  change the result, any error was harmless.  See Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir.

2  2012).  TRPA is entitled to summary judgment on this claim.

3                                          **VII.   Conclusion**

4         In the interest of justice and judicial economy, plaintiff's motion for administrative relief

5  to exceed page limits (ECF No. 37) is GRANTED and all of plaintiff's filings have been

6  considered.  Plaintiff's motion to supplement the record (ECF No. 29), is DENIED for the

7  reasons explained above.

8         Further, IT IS RECOMMENDED that plaintiff's motion for summary judgment (ECF No.

9  28) be DENIED, that defendant's motion for summary judgment (ECF No. 35) be GRANTED

10  and that this case be CLOSED.

11         These findings and recommendations are submitted to the United States District Judge

12  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days

13  after being served with these findings and recommendations, any party may file written

14  objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a

15  document should be captioned "Objections to Magistrate Judge's Findings and

16  Recommendations."  Any response to the objections shall be filed with the court and served on all

17  parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file

18  objections within the specified time may waive the right to appeal the District Court's order.

19  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57

20  (9th Cir. 1991).

21         IT IS SO ORDERED.

22  DATED: November 2, 2023

23

24  ALLISON CLAIRE
    UNITED STATES MAGISTRATE JUDGE

25

26

27

28

                                          20